## Orr's Estate.

*Decedents' estates—Sale of real estate—Sale under testamentary power—Supervision by orphans' court—Specific performance—Parties—Act of June 7, 1917, P. L. 363.*

1. The orphans' court has power, under Act of June 7, 1917, P. L. 363, to review, set aside, and, if necessary, to order a resale of real estate made under a testamentary power.

2. A sale under a testamentary power, while not primarily requiring confirmation by the orphans' court, is subject to its supervision and control.

3. It is the duty of the orphans' court to see that a fair value is received for a decedent's real estate.

4. In pursuance of this duty, the court may refuse to specifically enforce a contract, made by an executor in good faith, to sell real estate under a testamentary power, where it appears that a subsequent and larger offer from another party was made before actual conveyance.

5. Such a power will be exercised by the court even if the residuary legatees, the real parties in interest, do not formally appear, and demand that the more advantageous contract be accepted.

Argued April 21, 1925. Appeal, No. 252, Jan. T., 1925, by Frank Deitrich, Jr., first vendee of real estate, from decree of O. C. Phila. Co., July T., 1923, No. 2633, dismissing exceptions to master's report, in estate of James W. Orr, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petitions for specific performance.

Exceptions to report of Franklin Spencer Edmonds, Esq., master. Before VAN DUSEN, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Frank Deitrich, Jr., first vendee of real estate, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Maurice B. Saul,* of *Saul, Ewing, Remick & Saul,* with him *S. Lloyd Moore* and *Allen M. Stearne,* for appellant, cited: Fricke's Est., 16 Pa. Superior Ct. 38; Brittain's Est., 28 Pa. Superior Ct. 144; Barndt's Est., 23 Pa. Dist. R. 226; Andrew's Est., 6 Pa. Dist. R. 24.

*Fell & Spaulding* and *Frederick J. Knaus,* for appellee, were not heard.

OPINION BY MR. JUSTICE SADLER, May 11, 1925:

James W. Orr died in 1923, and, by his will, the estate was given to his wife for life,—she predeceased him,—and two Masonic Homes were named as residuary legatees. To the executor named, there was given the power to make public or private sale of his real estate, consisting, in part, of two houses, with the right to execute deeds in fee simple therefor. Basing the value of the properties in question upon an appraisement made some years before, an agent of the personal representative agreed to sell them to one Deitrich, his brother-in-law, for $14,500, of which $8,000 was to be paid in cash, and the balance to be cared for by the assumption of an outstanding mortgage. This contract was submitted to the executor and approved, $500 paid on account and deposited to the credit of the estate. Later, on the same day, another offer was made, through a second agent, to purchase the same houses, for the sum of $18,000 in cash, by one Krauser. Manifestly this proposition was beneficial to the estate, and the executor, on the day following, accepted it, returning the handmoney transferred when the first agreement was signed, and cancelled the contract.

The second purchaser filed a petition to show cause why specific performance of his agreements,—there being a separate contract for each house,—should not be directed. On the same day, Deitrich asked that the executor be restrained from conveying to Krauser, and, further, that the understanding first entered into by him as vendee should be enforced, and a decree made as agreed upon. Answers by the executor were filed, in which the facts set forth above appear with more elaboration, and replications were subsequently put of record by both petitioners. The residuary legatees did not formally appear in the proceedings, though written communications were submitted to the master, appointed to hear the case, before his report was filed, asking that the higher bid be accepted. The learned court below refused to consider the objections thus made to the acceptance of the lower bid, since those interested had not formally intervened. Whether correct in so holding, we view immaterial under the facts here presented.

The master found that the second agreement should be enforced, since it was obviously to the advantage of the devisees, and that the act of the executor in cancelling the first should be upheld. Though he calls attention to the relationship of the agent to the first proposed vendee, and that the agent may have been interested in financing the proposition, which involved a sale at an appraised price fixed many years before, yet the conclusion reached is not based on proven fraud, but is rested solely on the ground that the acceptance of the second offer is clearly for the best interests of the estate, and that it is the duty of the orphans' court to take such steps as may be necessary to effect this end. The exercise of due discretion for the preservation of the assets of a decedent is not only permissible, but mandatory, and its supervision over the disposition of realty should be exercised whether the sale be by virtue of an order for the payment of debts, or be made by an executor under a power conferred by will, so that a fund may be secured for like purpose, or

that distribution be rendered possible to those designated by the testator.

By the Act of 1917 (June 7, P. L. 363, sec. 9, pars. d and n), the orphans' court was given the power to control executors in the management of estates placed in their hands, and of "all cases within their respective counties, wherein executors, administrators, guardians or trustees may be possessed of, or are in any way accountable for, any real or personal estate of a decedent" (sec. 9, par. 1), a reënactment of clause 8, section 9, of the Act of 1836 (June 16, P. L. 719).

In discussing the earlier statute, this court said, in Dundas's App., 64 Pa. 325, 331: "It would appear from this legislation that the orphans' court has power to control executors and other testamentary trustees in the exercise of their powers over real and personal estate. There would seem to be good reason, therefore, to hold that the orphans' court has power to review, set aside, and, if necessary, to order a resale of real estate made under a testamentary power." And, as was stated by the Superior Court, in Brittain's Est., 28 Pa. Superior Ct. 144, 147: "A sale under a testamentary power, while not primarily requiring confirmation by the orphans' court, is subject in like manner to its supervision and control."

It is true that specific performance of contracts of sale of real estate will ordinarily be enforced, notwithstanding inadequacy of price, where there has been no fraud or unfairness in the transaction, so as to make such an order inequitable: Welsh v. Ford, 282 Pa. 96. When, however, we deal with the estate of a decedent, over which the court exercises a supervisory control for the benefit of all interested, it is well recognized that not only the power, but also the duty, exists to see that a fair value is received: Fricke's Est., 16 Pa. Superior Ct. 38; Schnebly's Est., 249 Pa. 208. This is true, though the attempted transfer by the executor, under the power

granted him, was exercised in entire good faith: Brittain's Est., supra.

To the principles of law set forth as controlling, the present appellant makes no special complaint, but insists that the real parties interested in this controversy were the residuary legatees, who did not formally appear, and demand that the more advantageous contract be accepted. The answers were filed by the personal representative of the decedent, and the court below correctly stated: "We think it is the duty of the executor to take any steps for the protection of the interested party which he thinks right, and that, being advised of the inadequacy of the price, or of imposition on him, he may refuse to carry out the sale." Clearly, when the equitable powers of the orphans' courts are called upon to compel specific performance of an agreement obviously unfair to the estate, it should not lend its aid for such purpose, no matter whether the residuary legatee becomes a party or not, since into its hands has been placed the duty of seeing that the decedent's property be properly administered and conserved. Here, the second bid, accepted by the executor, is $3,500 in excess of the one made by Deitrich, and was properly approved.

The decree of the court below is affirmed, costs of the appeal to be paid by the estate.