## Crawford's Estate

*Kratz, Hillegass, & Moran,* for petitioners.

*Harry J. Alker* and *Moore, Gossling & Panfil,* for Robert C. Boger.

*Henry M. Tracy* and *Samuel W. Cooper,* for Corn Exchange National Bank & Trust Co.

HOLLAND, P. J., September 27, 1933.—Two petitions were filed by Bertha Crawford, individually and as one of the executors of the will, and J. Fenton Cloud, guardian of the estate of Alfred Crawford, Jr., a minor, the only child of the decedent. The first petition was filed July 12, 1932, during vacation, at chambers. Answers were filed thereto July 30, 1932, by Robert C. Boger and Corn Exchange National Bank & Trust Co. An amended petition was filed January 18, 1933, by the same petitioners and answers were filed thereto on February 6, 1933, by said Robert C. Boger, and on February 10, 1933, by said Corn Exchange National Bank & Trust Co.

We will consider only the amended petition and answers thereto, as they include all matters and questions contained in the original petition and answers thereto, both as to fact and law.

The said amended petition will be hereinafter referred to as "the petition" Robert C. Boger as "Boger", and Corn Exchange National Bank & Trust Co. as "the trust company."

The petition sets out the death of decedent on December 18, 1930, leaving a will probated December 24, 1930, wherein Bertha Crawford, the widow, and Corn Exchange National Bank & Trust Co. were appointed executors and trustees of a trust therein contained. J. Fenton Cloud was appointed March 9, 1932, guardian of the estate of Alfred Crawford, Jr., the only surviving child of decedent. The widow elected to take against the will.

On April 13, 1932, upon petitions of the executors, the widow, and the guardian, being all the parties interested in the estate, the court by decrees authorized them under section 40 of the Fiduciaries Act to enter into an agreement to sell 2500 shares of Boger & Crawford, Inc., to Boger, said shares being one half of the entire number of shares of said corporation, the other 2500 shares being owned by Boger. Since the entry of those decrees, the widow and guardian have discovered that the sale price of said stock is grossly inadequate. On demand of Boger to complete the agreement and assign the stock, the trust company gave notice to the widow of its intention to do so without her joinder as coexecutor, on July 13, 1932, at 11 a. m., daylight saving time, at its office. On July 12, 1932, this court, upon the petition of the petitioners, enjoined the trust company from transferring the stock.

By the agreement authorized by the decrees, the price to be paid by Boger was $225,000, whereas by a proper interpretation of the agreements compromised and settled, the purchase price was to be approximately $1,000,000. Before the conclusion of the agreement, the trust company did not have adequate examinations, audits, and analyses made of the affairs of the company.

The foregoing are substantially the allegations of the petitioners. There were some other allegations of the fact that Boger was a director of the trust company at the time the compromise agreement was made and that counsel for the executors had also been the corporation counsel for some years, but as such allegations at best only amount to mere innuendo and as the whole record thus far shows that such counsel and the trust company acted with full fidelity to the trust, we do not intend to give these facts any consideration in this litigation. On the contrary, we intend to assume from the beginning that the trust company and its counsel acted in strict accordance with their best judgment of the moment in each step of the transaction and in conscientious observance of their duties.

Boger's answer, filed February 6, 1933, is in the nature of a demurrer raising preliminary objections to the petition. This answer avers that the petition is insufficient as to law and fact to sustain the vacation of the decrees of April 13, 1933; the court is without power to vacate the decrees; the injunction is contrary to law and equity and not sustained by the petition; the compromise agreement has been completed and title to the stock has passed to Boger and is beyond the control of the court by injunction or otherwise, and Boger has fully performed his part of the agreement; petitioners are estopped; there is no allegation of fraud, deceit, or coercion, lack of knowledge of facts, after-discovered evidence, new facts or law, error of law appearing upon the face of the record, return of money received on account, or higher offer; the agreement in question is sustainable in a court of law. Therefore, it is averred, the petition should be dismissed and the injunction dissolved.

The trust company filed an answer February 10, 1933. This answer avers the consideration for the agreement approved by the court or price for the stock is not inadequate; the agreements which were compromised and settled by the said approved agreement involved litigation; the transaction of the approved agreement was a settlement of controverted questions; the consideration is in effect $475,000 rather than $225,000 (the difference being the $250,000 paid the estate in the proceeds of insurance referred to in the answer) ; the respondent requires proof of facts unknown to it; the respondent acted in good faith at all times, and petitioners had full information of all that respondent did and of all that transpired; pursuant to the approved agreement of compromise Boger paid the respondent-executor $10,000 on February 27, 1932, and $100,000 on May 16, 1932, on account of the purchase price and notice thereof was given to the coexecutor petitioner on the same day; respondent submits itself to the court in the premises, but suggests that the petition should be dismissed.

Inasmuch as the answer of the trust company submits itself as a respondent to the court, the main consideration is as to the question raised by Boger. The answer of Boger raises (1) the question of jurisdiction of the court to issue an injunction; (2) the power of the court to vacate the decrees of April 13, 1933, entered under the provisions of section 40 of the Fiduciaries Act of 1917; (3) the question of jurisdiction or control by this court of the agreement of compromise and settlement, including the agreement for the sale of the stock; (4) the propriety of the court's exercising its jurisdiction or power to control said agreement; (5) estoppel.

It is difficult to see how anyone can doubt the power of this court to issue its injunction after reading section 16 of the Orphans' Court Act of 1917, as said section authorizes the exercise of this function in terms as plain and clear as written language can express it. However, reference is made to said power and a discussion is found in Kelley v. McGurl, 13 D. & C. 350, the authority being placed upon sections 9 (d) and (l) and 16 of the said Orphans' Court Act.

As to the power of the court to vacate these two decrees, it is important to examine into the provisions of section 40 of the Fiduciaries Act, under which the decrees were made. The terms of this section show conclusively that it is solely and only for the protection of a fiduciary in the exercise of his function when he is in a certain dilemma described by this section, and is of the opinion that certain actions would be to the best interests of the estate but hesitates to move for fear of being surcharged or at least a surcharge being sought against him by an interested party. Prior to this legislation, a fiduciary who was of the opinion that settlement or compromise of a claim by or against the estate or trust in his charge was for the best interest of the estate or trust could not make such compromise or settlement without taking the risk of a surcharge if the compromise or settlement proved to be detrimental to the estate or trust. The result was that fiduciaries were hesitant to take advantage of possible compromises and settlement which would have been advantageous to the estate, but the benefits were missed on account of the unreasonable burden resting upon the fiduciaries. Hence the wisdom of enacting this provision, whereby, with the approval of the court, the fiduciary can take advantage of a compromise or settlement affecting his trust and be relieved of responsibility in the premises. It was never intended that the privileges provided by this section should inure to any third party either directly or indirectly, but they are solely for the protection of the fiduciary.

Even with the provisions of the statute available to every fiduciary who desires to make a compromise or settlement, there is nothing to stop him him-

self from assuming voluntarily the risks of making the compromise or settlement without such authorization. In such case, he takes the risk of the compromise or settlement turning out to be a benefit or a detriment to his trust and exposes himself to an attack by surcharge by some interested party. But if he prefers to take the risk there is no prohibition against his doing so. It necessarily follows from this that, even though he has applied to the court for authorization to make the compromise or settlement, it does not necessarily follow that he has to, or that it is compulsory for him to, enter into such compromise or settlement. It is conceivable that he should first obtain such permission or authorization and subsequently change his mind and not enter into the agreement of settlement. It will be noted that section provides that the court may enter a decree "authorizing" fiduciaries to enter into the agreement of compromise or settlement. Such a fiduciary is in no sense irrevocably ordered or directed to make the compromise and settlement. It is doubtful whether, if the fiduciary, after obtaining this decree, finds that in his opinion it would be contrary to the interest of the estate to make the compromise and settlement, he need have the decree vacated at all. He can ignore it. But if it is necessary to have the decree vacated, if for no other reason than to clear the record, we see no reason why it should not be vacated merely upon the request of the fiduciary. It simply means that he chooses to stand upon the fixed rights and liabilities of the estate according to the status quo at the death of decedent, and to take his chance upon any litigation that may be inherent in or incidental thereto. If that is the fiduciary's judgment, and he is willing to take the responsibility thereof, we see no reason why he should not do so nor why the court should prevent it. It simply puts him back in the same position that he was before the granting of the decree authorizing the compromise and settlement, and in fact puts him back in the identical position a fiduciary occupied before the enactment of the legislation itself.

Applying these principles to the case before us, the decedent and Boger entered into certain agreements in their lifetime. It was the opinion of one of the petitioner fiduciaries, the widow, that the proposed compromise and settlement, involving as one of the settlements the sale of the stock, would be to the advantage of the estate. After further consideration, she is of the contrary opinion and desires to have the agreement set aside. In this position, she is supported by herself individually and by the guardian of the minor, who are the only parties interested in the estate. She and the guardian in effect state that they no longer wish to be protected by section 40 and desire the decrees to be vacated and the agreement of compromise and settlement set aside. The said decrees of April 13, 1933, will therefore be vacated as a matter of course, but whether the agreement of compromise and settlement and the sale of the stock therein included will be set aside is another question.

The question whether this court has jurisdiction and control of this agreement and the sale of the stock is too obvious to require discussion, and any extended discussion on this point would only be a waste of time and space. References need only be made to section 9 (d), (l), and (p) of the Orphans' Court Act of 1917, as amended by the Act of June 26, 1931, P. L. 1384; Orr's Estate, 283 Pa. 476, and McCullough's Estate, 292 Pa. 177. In those two cases, we have a complete review of the authorities upon the subject of the control of sales of assets by executors and administrators, showing the entire history of the rules applicable thereto up to and including the date of the respective decisions. Upon consideration of these authorities, no possible doubt could remain that this court has full jurisdiction and control of this agreement which has been entered into by the executors and the sale involved therein. The next

question is as to the propriety of exercising this jurisdiction and setting aside the agreement and sale.

Again, as indicated by Orr's Estate and McCullough's Estate, supra, the entire and sole question is the adequacy of the price. There is no other determining element. If the price is adequate, there will be a decree for the sale to be consummated, and, if the purchase price is inadequate the sale will be set aside. That is the sole issue. In the examination of this issue both executors, the interested distributees, and the proposed purchaser have a standing in court. In this case one executor (the trust company) approves of the sale, the other executor (the widow) disapproves of it, and the only other remaining parties interested as distributees, to wit, the guardian of the minor and the widow individually, disapprove of the sale. The purchaser Boger contends that the sale should be consummated. Boger has a standing in court to demonstrate, if he can, that the purchase price is a full, fair, and adequate one. He has no standing in court for the proof of any other fact.

Boger in his answer, and his counsel in their very able brief, have sought to reduce the case to a similarity with that of two living individuals in a court of law, in a suit upon a written agreement for the sale and purchase of property. He invokes the questions of fraud, deceit, and coercion as an excuse to evade a written instrument, lack of knowledge of facts, questions of after-discovered evidence, questions of new facts or law, the fact that the money received on account has not been returned, and the fact that no higher offer has been made. All these matters have no bearing whatever upon this case. Orr's Estate and McCullough's Estate, supra, and the authorities therein reviewed have put it beyond all doubt that a fiduciary of the orphans' court stands in a totally different position in his relation to others in dealing with the trust property than that of an individual dealing with his own property. It has been made plain that an orphans' court will not tolerate the sale of any property belonging to the trust except for a full, fair, and adequate price at the time of the consummation of the sale, regardless of any other circumstances, and that no third person, stranger to the estate, will be permitted to make a profit on his bargain with the fiduciary. Where any controversy arises with reference to the purchase from a fiduciary of an estate of any asset thereof, the sole question to be considered by the orphans' court is whether the purchase price is adequate, and if the purchaser urges the court to approve, or at least not set aside, the contract of sale, he has a standing to do so only upon an offer of proof of the fact of the adequacy of the price.

The question raised of estoppel requires little comment. If the foregoing is true, then the fiduciary who has made himself a party to a sale could not be estopped by any of his former conduct, if for any reason before the consummation of the sale he can show that the price is inadequate.

As heretofore indicated, the answer of Boger is in the nature of a demurrer, so that for the purposes of examination by this court of the preliminary objections made to the petition the court must assume that the facts alleged in the petition are true. If the facts alleged in the petition are all true, the purchase price of this sale is hopelessly inadequate even if it is regarded as $475,000, as it is contended that it should be by the trust company in its answer. Boger and the trust company should therefore be given an opportunity to file a further answer in denial of the facts alleged in the petition, so that an issue may be delineated to determine the sole inquiry as to whether the purchase price is adequate. Leave will therefore be given to both respondents, Boger and the trust company, to file answers setting up such additional relevant allegations as shall formulate the said issue.

And now, September 27, 1933, the decrees of this court under date of April 13, 1933, authorizing the joinder of the executors and J. Fenton Cloud, the guardian of decedent's minor son, in the agreement of compromise and settlement therein referred to, which decrees are referred to in the petition, are hereby vacated; and leave is granted to Robert C. Boger and Corn Exchange National Bank & Trust Co., coexecutor of this estate, to file additional answers to the petition.                    From Aaron S. Swartz, Jr., Norristown, Pa.