## Crawford's Estate.

Argued January 20, 1936. Before KEPHART, C. J., MAXEY, DREW, LINN and BARNES, JJ.

*S. Lloyd Moore,* of *Moore, Gossling & Panfil,* with him *Harry J. Alker, Jr.,* for appellant.

132

*Wm. J. Moran, Jr.,* with him *Maxwell H. Kratz,* of *Kratz, Hillegass & Moran,* for appellees.

OPINION BY MR. JUSTICE LINN, March 23, 1936:

On petitions of the executors, and the guardian of a minor, being all the parties in interest, the learned court below, April 13, 1932, approved a contract, inter alia, for the sale to Robert C. Boger, of decedent's interest, 2,500 shares, in Boger and Crawford, Incorporated. Before the shares were transferred, the order of approval was revoked. Boger, the purchaser, appeals and presents two points: that in the circumstances (1) the court lacked power to revoke the order; (2) conceding the power, there was abuse of discretion.

Crawford died in December, 1930, testate, leaving a widow, Bertha, and a minor son then nearly 15 years of age. Letters testamentary were granted to the widow and Corn Exchange National Bank and Trust Company, hereafter referred to as trust company. Cloud was appointed guardian for the minor. The pecuniary legacies have been paid, leaving the only parties now interested, the minor and the widow, who elected to take against the will. Voluminous evidence was presented in the proceedings to revoke.

Boger and Crawford founded a prosperous business, conducted in corporate form under the title of Boger and Crawford, Incorporated, each owning one-half of the 5,000 shares of capital stock. They had given some thought to what should happen to their share-holdings on the death of either. In his will, dated November 10, 1925, Crawford provided that if his son should not wish to continue his business, he requested "that the persons or parties owning the balance of interest in said firm shall have the first choice and option to purchase my said holdings at the book value or better. . . ." By agreement dated November 22, 1929, they dealt with the sale to Boger in case of Crawford's death "at a price which shall be the book value thereof as determined by the

audit of Boger and Crawford, Inc., next preceding the date of Crawford's death." Later, they signed a supplementary paper providing, inter alia, that to the book value there should be added the sum of $500,000 for good will "and as [Boger and Crawford] are equal stockholders, the price should be 50% as according to his holdings or as it stands to-day, the surviving partner would have to pay $250,000 additional for good will." There was a third agreement dated October 29, 1930, which need not now be stated.

After Crawford's death, various negotiations seem to have taken place ending in the execution of two agreements dated February 25, 1932, between the executors and Boger by which, so far as it is now necessary to state them, it was agreed to sell decedent's 2,500 shares to Boger for $225,000 on conditions specified which included the compromise of alleged claims. To obtain judicial approval of the proposed sale and compromise, petitions were filed, a joint petition by Bertha Crawford, as widow and executrix, and the trust company as coexecutor, and one by the guardian. These petitions set forth, inter alia, the agreements by Crawford and Boger referred to above, a transaction involving the payment to the estate of $250,000 of life insurance carried by the corporation on Crawford's life, possible disputes arising from the agreements and the proposed contract of sale; petitioners averred that they were informed in the premises, and that the proposed sale and compromise was in the best interest of the beneficiaries of decedent's estate. So advised by all parties concerned, the learned president judge of the court below April 13, 1932, made an order of approval as prayed for.

The subsequent proceedings disclose that Mrs. Crawford, as widow and executrix, and Cloud, as guardian, were not accurately informed, as they had represented in their petitions for approval. They filed appropriate petitions so averring, and that the purchase price was grossly inadequate; issues were raised by the answers of

the trust company and Boger; testimony was taken. On that record the learned court vacated its former order of approval and in addition set aside the proposed contract of sale. From this action Mr. Boger appeals.

1. There can be no doubt about the power of the court to make the order. Even if prior approval had not been obtained, the fiduciaries (whose limited capacity to agree became part of the contractual relation) had the right to rescind for adequate cause; on proper showing they had a duty to rescind; they were not required to perform and take their chances with possible surcharge. By obtaining approval in good faith, they avoided that risk: Section 40,[1] Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS, section 787. Having obtained approval on representations subsequently shown to have been materially inconsistent with the facts, it was their duty to present the truth to the court. Its power to make an appropriate order could be no less than their own to rescind, in fact it is greater including, as it does, the power to restrain: see sections 9 and 16 of the Orphans' Court Act of June 7, 1917, P. L. 363, 20 PS, sections 2241 et seq. and 2312. The opinions filed in *Orr's Est.*, 283 Pa. 476, 129 A. 565, and in *McCullough's Est.*, 292 Pa. 177, 140 A. 865, contain all that is necessary to be

---

[1] "Whenever it shall be proposed to compromise or settle any claim, whether in suit or not, by or against a minor or the estate of a decedent, or to compromise or settle any question or dispute concerning the validity or construction of any last will and testament or the distribution of any decedent's estate, the orphans' court having jurisdiction of the accounts of the fiduciary shall be authorized and empowered, on petition by such fiduciary, setting forth all the facts and circumstances of such claim or question and proposed compromise or settlement, and duly verified by oath or affirmation, and after due notice to all parties interested, and after due consideration, aided, if necessary, by the report of a master, if satisfied that such compromise or settlement will be for the best interests of such minor or of the estate of such decedent, to enter a decree authorizing the same to be made, which decree shall operate to relieve the fiduciary of responsibility in the premises."

said on the subject. The right to review and revoke an existing order before final consummation cannot be questioned: *Brown's App.*, 68 Pa. 53; *Armstrong's App.*, 68 Pa. 409; *Crawford's Est.*, 221 Pa. 131, 70 A. 582.

2. In setting aside the agreement was there abuse of discretion within the rule applied in the cases cited?

The purchase price specifically stated in the agreement is $225,000. In the answer of the trust company the $250,000 insurance is considered a part of the price (for reasons which need not now be stated) making it $475,000. For purposes of comparison, in dealing with the question of inadequacy, the learned court below took that sum plus two other sums (fully described in the record but immaterial at this point) making a total of $497,838.50 as the purchase price which would have been received if the sale had been consummated. The question the court had, then, was whether $497,838.50 was inadequate, as alleged, for decedent's shares of stock and in compromise of the claims, the nature of which it is also unnecessary now to set forth. The subject was dealt with at length. The property of the corporation was subjected to minute examination. The evidence of appraisers and accountants, said to be experts in their vocations, was received; over a thousand pages of printed record is made up of their evidence and their reports. One witness gave the total value of Boger and Crawford, Incorporated, as $2,858,034.96.[2]

The expert evidence produced by Boger showed a value considerably less but it was apparently based, as the court found, on a "liquidation value" only, and therefore not the value of a going concern in flourishing condition as this corporation undoubtedly was. The court

---

[2] Fixed Assets ............................... $1,971,585.88
  Quick Assets as of 12/31/33 ..... $1,174,710.94
  Less Liabilities ................ 288,261.86
                                   ——————— 886,449.08
                                              ——————————
                                              $2,858,034.96

136

found that the purchase price, taking it at $497,838.50 "is considerably less than half its fair value, not counting this element of good will. This divergence of proportion may be excessive, but, even allowing for considerable exaggeration, the evidence before us renders the price inadequate. . . ."[3] We find no reason for differing from the conclusion reached.

The order appealed from is affirmed, but for the reason stated at the oral argument, the costs on appeal shall be equally divided between appellant and the estate.

[3] The Pennsylvania Capital Stock reports filed by the company show a net valuation of $1,864,534.81 in 1931; $1,858,220.01 in 1932; $1,897,147.16 in 1933. The Federal Capital Stock Tax return for 1933 shows a valuation of $1,749,999.00.