## Coyle's Estate

*Joseph B. Quinn,* for exceptant.
*Arthur M. Cooper* and *Sidney Schwartz,* contra.

HUNTER, J., May 12, 1944.—Petitioner, substituted trustee under the will of the testator, presented a petition for confirmation of private sale of real estate under the Revised Price Act. An answer having been filed by the life tenant, averring that the price obtained, $15,000, was not fair and adequate, the matter was referred to a master. During the proceedings before the master, a higher offer of $16,500 was made by Rose Walker, whereupon the trustee entered into an agreement of sale with the new purchaser, subject to the approval of the court. Subsequently, the original purchaser, Louis Schwom, increased his offer to $17,100, and, no higher offer having been made by Rose Walker

and the price being satisfactory to the life tenant and to the other parties in interest, the master reported his approval of the sale, and by decree of this court the sale was confirmed to Louis Schwom, the original purchaser.

The master dismissed the claim of James J. Grady, real estate agent for the unsuccessful bidder, for a division of commissions between him and Louis Schwartz, coöperating with Max Schermer, Inc., agent for Louis Schwom, the successful purchaser. To this conclusion James J. Grady excepts.

The trustee signed commission agreements with both brokers, that with Mr. Grady being to pay him commissions in accordance with the Act of 1941 and as might be approved by the orphans' court.

The Act of July 2, 1941, P. L. 227, 20 PS §2254, is in part as follows:

"Provided, however, That nothing . . . shall be construed to relieve executors, administrators or trustees who have entered into an agreement of sale of real estate of a decedent or any other real estate held in trust in good faith, and who prior to the time fixed for settlement thereunder have received a higher offer for such real estate, from the payment of real estate broker or broker's commissions to the broker who had procured such agreement of sale, and in the event that more than one real estate broker is entitled to commissions for said agreements of sale, then such commissions shall be equally divided between or among such real estate brokers: Provided, further, That the total aggregate commissions paid shall in no event exceed five per cent of the gross consideration of the final sale."

It was decided in Orr's Estate, 283 Pa. 476, and McCullough's Estate, 292 Pa. 177, that it is not only the power but the duty of the court to see that a fair value is received in a sale by a fiduciary. A fiduciary who has entered into an agreement of sale is required to cancel the agreement if he receives a higher offer prior to the time fixed for settlement: Kargiatly v. Provident

Trust Company of Philadelphia et al., 338 Pa. 358; Bolen v. Spahr, 154 Pa. Superior Ct. 193; Costello's Estate, 39 D. & C. 596; Ladner's Real Estate Conveyancing, p. 95. In Clark et al. v. Provident Trust Co., 329 Pa. 421, it was held that a real estate broker's right to commissions for procuring a purchaser was defeated by the fiduciary's duty to reject such an agreement, and that persons dealing with an executor or other trustee are bound to be cognizant of the extent of his powers when he acts in a fiduciary capacity.

The purpose of the Act of 1941 was to correct the injustice done by these decisions to a broker who had earned his commissions.

The act was construed in Neely v. The Pennsylvania Co., etc., et al., 152 Pa. Superior Ct. 70, where a broker in a canceled agreement was awarded a share of commissions, although the canceled agreement provided that no commission was to be paid if settlement under the agreement was not actually completed. It was held that this release from liability was to operate only if the deal fell through for any one of a number of reasons other than a sale through another broker at a higher price.

Hirt, J., said (pp. 73-74):

"This is remedial legislation to be liberally construed in the light of the occasion for the law, the mischief to be remedied and the object to be attained. Statutory Construction Act of May 28, 1937, P. L. 1019, §§51, 58. . . .

"The purpose of the amendment was to place brokers who have earned commissions in positions of equality by a division between them of the amount of a single commission. It was enacted also in the best interests of the trust. A broker is more likely to exert himself to secure a purchaser on acceptable terms by the assurance that he will not be wholly barred from compensation by the chance that another broker may offer more. The 1941 amendment is applicable to the situation here presented."

The statute should present little difficulty where there is a division of commissions between a broker whose agreement is canceled and a broker for a later and successful bidder. The difficulty is where there are intermediate and unsuccessful bidders. If, as has occurred at the bar of this court, a bidder appears in competition with others, and his bid is rejected because another has bid a higher price, or for other good reason, then we would without hesitation deny him a share in the commissions, because he is a mere volunteer, without contract of employment, or acceptance or adoption of his acts by the trust estate: Ladner's Real Estate Conveyancing, p. 55, and see section 194 thereof, pp. 515-516. It would be absurd to give the representative of every bidder a share in the commissions merely because he submitted a bid.

In the instant case the facts vary from the above because the trustee did enter into an agreement with the second bidder and his broker, but we call attention to the fact that proceedings were then pending before the master because of the life tenant's objection to a sale. Under the circumstances, the second agreement was but an offer to the court.

When, therefore, the second offer was rejected by the master and by the court, because the first purchaser increased his bid, the intending purchaser became an unsuccessful bidder, and she and her representative acquired no rights against the trust estate.

We believe that the first broker has justly earned his commissions. His work and time in the ordinary case are greater than that of a second broker. In addition to finding a purchaser he must negotiate with the seller and bring the parties together, whereas the second need but submit a higher offer.

The exceptant earnestly contends that the act contemplates unsuccessful bidders, because it provides that commissions shall be "equally" divided "between or among" real estate brokers, indicating that a series of

brokers may be entitled to share therein. It so happens in the instant case that two brokers coöperated in representing the successful purchaser, and it may be that the act was intended to cover such a situation.

In the case entitled Re Straight Mortgage Pool, 45 D. & C. 695, 90 Pitts. 603, the Orphans' Court of Allegheny County held that a broker who represented a second unsuccessful bidder, whose competition forced the original bidder to increase her offer, was not entitled to a division of the commissions.

We conclude, therefore, that there is no right in the representative of the unsuccessful bidder to share in commissions under the Act of 1941.

The exception of James J. Grady is dismissed, the conclusions and recommendations of the master are approved, and his report is confirmed absolutely.

BOLGER, J., dissenting.—The majority opinion goes unnecessarily far in its broad ruling that the Act of July 2, 1941, P. L. 227, does not, by its terms, protect a broker who produces a second bidder with whom the executor contracts, even though his contract be not finally accepted. It is perfectly clear that in order to obtain the best possible price for the estate an executor may enter into two or more contracts in turn for successively higher prices. If he does not do so, he might properly be subject to surcharge. It is his duty to obtain the higher price and to bind the prospective purchaser in every instance. Judge Ladner, in his work on Conveyancing in Pennsylvania, vol. I, p. 95, sec. 45 (a), Fiduciary Agreements of Sale, states that it is the duty of a fiduciary, even after the agreement of sale has been executed, to accept a substantially higher offer if made before actual settlement, citing Orr's Estate, 283 Pa. 476, and McCullough's Estate, 292 Pa. 177.

It may be said that a fiduciary cannot legally enter into more than one contract to sell the same real estate, because in making the first contract he divests him-

self of the equitable title and there is nothing therefore he can sell to anyone else: Kerr et al. v. Day, 14 Pa. 112; Driebe et al. v. Fort Penn Realty Co. et al., 331 Pa. 314. But this principle does not apply to sales by a fiduciary. As previously stated, the rule as laid down in Orr's Estate and in McCullough's Estate that a higher offer must be accepted, if made at any time prior to actual settlement, is the one applicable to fiduciaries. Such acceptance, of course, if made, can be by contract only, which presupposes the right and the necessity to contract. Sales of real estate by fiduciaries may or may not require the interposition of the court; the will of the testator is often the governing authority. The doctrine of Orr's Estate, supra, does not distinguish between sales made with or without the approval of the court, and we therefore must take it that the rule applies to both classes of case.

As stated in Neely v. The Pennsylvania Co., etc., et al., 152 Pa. Superior Ct. 70, the Act of 1941, supra, was passed for the purpose of effecting equality among brokers in the division of one commission where they all may have earned compensation for their services. By its terms, the act now protects all brokers who are "entitled to commissions for said agreements of sale", provided that the total aggregate commission paid shall not, in any event, exceed five percent of the gross consideration of the final sale. This, in my opinion, protects the broker for a second contractor, although unsuccessful, as well as a first bidder who was unsuccessful. Both bids are unsuccessful for the same reason, viz, insufficiency of price.

To argue that the first broker is in a preferential position because he produces the first offeror begs the question, which is which offer will yield the top dollar to the estate. Furthermore, a second broker might do the estate as much service as the first. Here the exceptant, Mr. Grady, broker for the second party, appeared as an expert witness at the first hearing before

the master and testified that the only offer then before the court, $15,000, was inadequate. On cross-examination he was asked if he had a higher bid. He said he did not. Apparently he met this challenge by going out and obtaining a higher bidder at $16,500. In doing so he contributed to procuring the increase in the purchase price paid by the ultimate purchaser. In presenting this offer to the trustee, however, he was careful to insure himself that he would be paid for his services by obtaining an agreement of sale between his client and the trustee. Had he merely submitted a bid which was not accepted he would probably not have been entitled to a share of the commission. No one can criticize this transaction. The trustee had to contract in order to protect himself and the estate. He could not merely say to Mr. Grady, "appear before the master and make your bid". That might have scared Mr. Grady off because he could readily perceive that by merely entering a bid his commission would be endangered, and the trustee might have been surcharged if Mr. Grady did not appear and make his bid. But being willing to split the commission, exceptant was willing to, and did, have his client contract to purchase the property. Therefore, the conclusion in the majority opinion that Mr. Grady's client's contract under the circumstances was not a contract, but was merely an offer to the court, is incorrect. It was just as much an obligation as was the original contract then before the court.

The statement in the majority opinion quoted from Neely v. The Pennsylvania Co., etc., et al., 152 Pa. Superior Ct. 70, is applicable equally to a second bidder as well as to a first bidder. There the agreement expressly provided no commission was to be paid if settlement under the agreement was not actually completed, and the court said:

"The purpose of the amendment was to place brokers who have earned commissions in positions of equality

by a division between them of the amount of a single commission. . . . A broker is more likely to exert himself to secure a purchaser on acceptable terms by the assurance that he will not be wholly barred from compensation by the chance that another broker may offer more . . ."

Any other construction of this act might lead to a diminution in the zeal of brokers to coöperate with executors and other fiduciaries in the sale of real estate, and therefore deprive estates of the opportunity of getting the top price. The latter is, after all, the most essential element in the controversy.

The further argument that chaos will result if the act is construed as herein viewed likewise begs the question—what is the best price for the estate? If brokers are willing to split commissions, that is their business and we should have no objection. Furthermore, it would appear to me that if more than two bidders or contractors appear before the court upon the presentation of the fiduciary's petition for leave to sell at private sale, such appearances might constitute evidence from which the court could find that a market actually exists for the property, and that the fiduciary's averment in his petition that no market exists and that the price stated in the petition is better than any that could be obtained at public sale is not justified, and that in consequence the court should direct a public sale. While under the law public sale is the rule the reverse is true, if we are to judge from numerous petitions for private sale presented to the court compared to the rarity with which public sales are requested. The attention of those interested in the administration of decedents' estates is called to this circumstance.

In my opinion the exceptions should be sustained the provisions of the Act of 1941, supra. He procured because Mr. Grady has clearly brought himself within

an agreement of sale in good faith for a higher price than that which then existed and is therefore entitled to share the commission equally with the broker for the successful bidder.

President Judge Van Dusen joins in this dissent.

NOTE. The foregoing decision was reversed on appeal: 156 Pa. Superior Ct. 185.