**Trumbauer Estate**

*Arthur M. Eastburn* and *Jules Pearlstine,* for petitioner.

*James C. Bowen,* for executor.

*Cyril L. Weston,* for objector.

SATTERTHWAITE, P. J., April 3, 1964.—The question presented here is whether the court, under sec-

tion 513 of the Fiduciaries Act of 1949, either may or should require and compel the settlement of a controversy between decedent's estate and one of the beneficiaries thereof. The latter was the purchaser of decedent's real estate under an inter vivos contract of sale, and the dispute arises out of the interpretation and significance of certain testamentary provisions by decedent as to the payment of the balance of the purchase price. An unusual feature of the case is the circumstance that the petition for approval of the proposed compromise was filed by the purchaser-beneficiary, offering terms of settlement to which decedent's personal representative has not agreed; although some of the beneficiaries of the estate are willing to accept the proposal, others of them not only have failed to approve the offer, but have actually objected thereto.

In 1947, decedent contracted in writing with petitioner Harry G. Faylor, his grandson, to sell to the latter for the sum of $30,000 certain real estate on which a nursery business was located and which petitioner thereafter operated with, or on behalf of, decedent. Of the contract price, $10,000 was to be paid, and apparently was so paid, out of petitioner's earnings from the business conducted thereon during decedent's lifetime. The contract further provided that the balance of $20,000 was to be paid to decedent's executors "as soon a possible after my [decedent's] death". Decedent died on March 28, 1962, leaving a will, whereby he provided, after reciting the contract with petitioner and the fact that $20,000 was still due and owing on account of the purchase price, as follows:

". . . at the time of my death, or as soon thereafter as the same may be accomplished, I direct that my executor convey to my grandson, Harold G. Faylor, by a proper deed and/or other instruments, the property and business described in the Agreement between

us; and if Harold cannot pay the balance due at that time, I then direct my executor to take back a first mortgage and bond for the unpaid balance, which said obligation shall be payable, without interest, in yearly installments of Twenty-Five Hundred Dollars ($2500.-00).

"I have provided that he shall pay no interest in appreciation of mutual affection and our years of close business relations; but in the event of his demise, or the sale of the said property, the transferee or the new owner, will pay five percent (5%) interest from the date of transfer or sale, together with the annual installments of Twenty-Five Hundred Dollars ($2500.00)."

After certain other provisions not presently relevant, testator further directed that his residuary estate be divided into four parts, three payable outright and one thereof to be held in trust for the life of a granddaughter with remainders over. Testator also appointed the Bucks County Bank and Trust Company as executor, as well as trustee for the one-fourth share given to the granddaughter for life.

The dispute which provides the background occasion for the instant application arises out of the fact that the executor has refused Faylor's demand that it convey the premises to him and take back the $20,000 interest-free mortgage provided for by the will. The executor's position is that it is not required to do so unless and until Faylor demonstrates his financial inability to pay said sum; it has indicated its belief that he could raise that amount by commercial mortgage or other secured loan on the premises or other property, if his cash position, in fact, would render such action necessary. In reply, Faylor has insisted that under the will he should not be required to incur such an obligation, and, having only "a couple of thousand dollars" in cash "available" at this time,

that he "cannot pay the balance due". Prolonged negotiations between the parties have failed to resolve the controversy.

In order to resolve the deadlock, Faylor filed the instant petition, offering therein to "compromise" the matter by proposing that the property be conveyed to him upon his payment to the executor of the sum of $14,600 in cash, that being the amount which he alleges to be the present worth of a $20,000 mortgage on the basis of an interest rate of six percent over the eight-year life contemplated by the $2,500 annual principal payments provided for by the will. The gist of the petition is that the offer should be approved by the court, and the executor required to abide by the same, in order to avoid litigation with attendant expense, complications and delay, and to carry out the "desired result of the testator". Appended to the petition as an exhibit was the written approval and joinder of some, but not all, of the residuary legatees. The corporate executor and trustee did not consent or join in the application; to the contrary, the executor and the life tenant of the trust of the one-fourth share, by her separate counsel, filed answers opposing the proposed settlement and challenging the propriety of the proceedings under section 513.

At the hearing held by the court and attended by some, but not all, of the beneficiaries, counsel for the life tenant persisted in his objection, as did the corporate executor unless all parties consent. Petitioner thereupon suggested a new proposal for the court's approval whereby, based on his assumed inability to pay cash, the dispute would be settled in accordance with the terms of the will, that is, the executor would be directed to convey the subject premises to him upon his giving a purchase money mortgage for $20,000, interest-free, principal to be paid at the rate of $2,500 per annum. The beneficiaries present at the hearing

agreed to this proposal, but not the executor. Inasmuch, however, as others had not been advised thereof or had not consented thereto, the court continued the matter to furnish notice to them and to obtain their consents, if possible. At the adjourned hearing, it appeared that two of the beneficiaries refused to consent to the modified proposal, and, in fact, that one of them had withdrawn her consent to the original proposition.

On this state of the record, the court believes that it neither can, nor should, grant either the prayer of the petition or the alternative proposed at the hearing. Section 513 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.513, provides as follows:

"Whenever it shall be proposed to compromise or settle any claim, whether in suit or not, by or against the estate of a decedent, or to compromise or settle any question or dispute concerning the validity or construction of any will, or the distribution of all or any part of any decedent's estate, or any other controversy affecting any estate, the court, on petition by the personal representative or by any party in interest setting forth all the facts and circumstances, and after such notice as the court shall direct, aided if necessary by the report of a master, may enter a decree authorizing the compromise or settlement to be made."

We believe that it would be a distortion of the legislative purpose and function obviously intended by this statutory proceeding to apply the same to the instant situation, so as to dictate and compel an involuntary compromise of a controversy which the personal representative's judgment has not led it to believe should be compromised. Insofar as the executor is concerned, no "compromise or settlement" exists, and, accordingly, there is nothing before the court for approval under section 513. All the peti-

tion discloses is that an offer has been made looking toward a possible settlement, but the fiduciary has not accepted the same and, in fact, has unequivocally refused to agree thereto unless all parties agree or it be compelled by the court. It may well be that the court would have the power under section 513 to approve a proper compromise proposed by a personal representative, or agreed to by him, even though a beneficiary of the estate might object thereto (see, e.g. Norris' Estate, 329 Pa. 483, decided under the substantially similar provisions of section 40 of the Fiduciaries Act of 1917, now repealed) ; there would be little need for such a proceeding if everyone's consent were required. But we have neither found nor been referred to any case where court approval of a compromise before the event under such legislation was entered without the joinder or consent *of the fiduciary involved.*

The reason for the absence of such precedent and for our conclusions in the instant case becomes apparent when the obvious purpose of this statutory provision as a protection and safeguard to the fiduciary be considered. The relevant considerations are ably expressed by former President Judge Holland, of the Orphans' Court of Montgomery County, in Crawford's Estate, 20 D. & C. 186, affirmed by the Supreme Court in 321 Pa. 131. In that case, the court, on petition of the executors and the guardian of a minor beneficiary, had approved a compromise settlement of a dispute concerning the purchase price of certain closely held corporate shares of stock owned by decedent and contemplated to be sold to a surviving shareholder. Before the transaction so approved had been consummated, however, one of the executors and the guardian of the minor ascertained that certain information upon which the compromise had been negotiated was erroneous, and that the value of the stock

was substantially in excess of the sale price so approved. They accordingly sought to set aside the court's approval of the compromise agreement and to enjoin the transaction which the coexecutor still proposed to carry out. In sustaining this application, and dismissing the contention that the court had no power to avoid its former decree, Judge Holland commented in presently relevant part on the function and significance of compromise approval proceedings, as follows, 20 D. & C. at 188-89:

"As to the power of the court to vacate these two decrees, it is important to examine into the provisions of section 40 of the Fiduciaries Act, under which the decrees were made. . . . Prior to this legislation, a fiduciary who was of the opinion that settlement or compromise of a claim by or against the estate or trust in his charge was for the best interest of the estate or trust could not make such compromise or settlement without taking the risk of a surcharge if the compromise or settlement proved to be detrimental to the estate or trust. The result was that fiduciaries were hesitant to take advantage of possible compromises and settlement which would have been advantageous to the estate, but the benefits were missed on account of the unreasonable burden resting upon the fiduciaries. Hence the wisdom of enacting this provision, whereby, with the approval of the court, *the fiduciary* can take advantage of a compromise or settlement affecting his trust and be relieved of responsibility in the premises. It was never *intended that the privileges provided by this section should inure to any third party either directly or indirectly, but they are solely for the protection of the fiduciary.*

"Even with the provisions of the statute available to every fiduciary who desires to make a compromise or settlement, there is nothing to stop him himself from assuming voluntarily the risks of making the com-

promise or settlement without such authorization. . . . It necessarily follows from this that, even though he has applied to the court for authorization to make the compromise or settlement, *it does not necessarily follow that he has to, or that it is compulsory for him to, enter into such compromise or settlement.* . . . It will be noted that section [40] provides that the court may enter a decree 'authorizing' fiduciaries to enter into the agreement of compromise or settlement. *Such a fiduciary is in no sense irrevocably ordered or directed to make the compromise and settlement.* It is doubtful whether, if the fiduciary, after obtaining this decree, finds that in his opinion it would be contrary to the interest of the estate to make the compromise and settlement, he need have the decree vacated at all. He can ignore it. But if it is necessary to have the decree vacated, if for no other reason than to clear the record, we see no reason why it should not be vacated merely upon the request of the fiduciary." (Italics supplied.)

We believe that these considerations are equally applicable to proceedings under section 513 of the Fiduciaries Act of 1949, hereinabove quoted. While the latter permits the petition to be filed by any party in interest, rather than solely by the personal representative, as formerly required by section 40 of the Act of 1917, and the 1949 act no longer spells out in so many words that a decree thereunder shall relieve the personal representative of responsibility in the premises, as did the Act of 1917, we cannot believe that the fundamental purpose or object of the authorization so provided for has been changed; it is inconceivable that a fiduciary acting pursuant to a court decree after due notice approving a compromise, would be subject to subsequent surcharge therefor. It might be, for practical reasons, that the moving party for court approval, even though the proposal has been

agreed to by the personal representative, should be another party. In any event, the procedure would still seem to be designed to expedite the practical and convenient administration of a decedent's estate by encouraging a proper compromise where the occasion would be appropriate therefor, in the judgment *of the personal representative* actually administering the estate, who would be in a position more freely to negotiate the same in view of his knowledge that he would be protected therein by judicial approval after notice to the parties in interest.

Moreover, section 513, like its predecessor, is permissive and not mandatory in its terms. We doubt that we would have authority thereunder to *compel* the personal representative to abide by a proposed compromise to which, in his judgment, the estate should not have agreed. After all, it is the fiduciary who has the responsibility for the exercise of skill, discretion, judgment, knowledge of the parties and all other circumstances relevant to such matters; the court neither can, nor should, be called upon to render advance advisory opinions under statutory provisions similar to section 513: Small's Estate, 67 York 1; Middleton Estate, 1 D. & C. 2d 162.

We recognize the possibility that our conclusions might conceivably result, in a given case, in the failure to effectuate a proper settlement of a controversy which should have been compromised but to which the personal representative injudiciously or stubbornly refused to agree notwithstanding the wishes of all other parties in interest. In this connection, however, personal representatives have recently been put on notice that their participation in and attitude towards proposed settlements are themselves not without fiduciary responsibilities. If a personal representative refuses to enter into a compromise and such refusal appears to be arbitrary, unreasonable and

clearly contrary to the best interests of the estate, such circumstances in themselves may be sufficient ground for the fiduciary's removal: Bailey Estate, 409 Pa. 222. Parenthetically, it should be noted that the lower court in the Bailey case (the opinion of which is reported in 186 A. 2d 1), while indicating that it would have approved the compromise settlement proposed by the other heirs had it been presented by the personal representative, felt that it did not have the power to do so on the heirs' petition, regarding it as premature, and apparently decided that it was limited to granting their alternative prayer for removal of the administratrix for refusal to enter into such a compromise. The Supreme Court affirmed per curiam on the lower court's opinion.

We decline to pass upon the perplexing and possibly difficult adversary merits of the controversy in this proceeding, or to consider petitioner's application as though it were a petition for specific performance or other appropriate action to raise the question. Such determinations, if attempted on the present record, would be founded on a woefully deficient factual basis, there being no evidence, other than his cursory and inconclusive statements, of petitioner's actual financial position. Moreover, the parties were not legally required to be prepared to reach the merits, since it would not be the function of the court in acting upon the application for approval of the proposed compromise to render judgment on the merits of the controversy. Indeed, the whole and only purpose of the proceedings, as the parties might well have expected, was to determine whether the court would avoid the necessity for such adversary litigation. See, e.g., Nolde Estate, 43 Berks 207, 212.

### Order

And now, April 3, 1964, for the reasons stated in the foregoing opinion, the petition of Harold G. Faylor for

compromise is hereby denied and refused, and the citation granted thereon discharged.