# Acklin's Estate.

*Wills—Power of sale—Equitable conversion—Sale for the payment of debts—Orphans' Court sale—Jurisdiction—Act of February 24, 1834, P. L. 70.*

1. A direction by a testator to his executors to sell his real estate and distribute the proceeds thereof amongst his widow and daughters in certain portions, with a trust for the widow for life, works a conversion of the real estate for the purpose of distribution, but it does not oust the jurisdiction of the Orphans' Court to order a sale of the real estate for the payment of the testator's debts.

*Sale—Orphans' Court sale—Confirmation—Inadequacy of price —Laches.*

2. Where real estate of a decedent has been sold under an order of the Orphans' Court, and the sale has been duly confirmed, the purchase money paid, and a deed delivered, a party in interest cannot, in the absence of fraud, after two years from the expiration of the sale, have the sale set aside because of inadequacy of price; and this is especially so where no better price is offered, nor any security tendered to insure a higher price at a re-sale.

Argued May 9, 1912. Appeal, No. 115, Jan. T., 1912, by Mary M. Acklin, from decree of O. C. Fayette Co., June Court, 1908, No. 121, refusing to set aside executor's sale of real estate in Estate of Robert H. Acklin, deceased.  Before FELL, C. J., POTTER, ELKIN and MOSCHZISKER, JJ.  Affirmed.

Petition to set aside sale of real estate for the payment of debts.  Before WORK, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court refusing to set aside the sale.

*W. J. Sturgis,* with him *E. H. Reppert* and *S. J. Morrow,* for appellant.—The court had no power to grant an order of sale: Bashore v. Whisler, 3 Watts 490; Smith v. Wildman, 178 Pa. 245; Mustin's Estate, 194 Pa. 437; McWilliam's App., 117 Pa. 111.

The sale was not a compliance with the power: Dundas's App., 64 Pa. 325.

The price was grossly inadequate and the court should have so found.

*D. W. McDonald,* with him *John S. Christy, J. B. Adams, H. L. Robinson, W. C. McKean* and *James R. Cray,* for appellees.—The application was too late: Carson's Sale, 6 Watts 140; Simmond's Est., 19 Pa. 439; Cake v. Cake, 156 Pa. 47; Westmoreland Guarantee Bldg. & Loan Assn. v. Nesbit, 21 Pa. Superior Ct. 150; Murphy's Est., 11 W. N. C. 419; Herr's Est., 2 Pa. D. R. 737; Dimock's Est., 3 Clark 317; Ryan's Est., 2 Pitts. 178; Cronrath's Est., 1 Woodward 103; Carroll's Est., 2 Kulp 37; Felton v. Felton, 175 Pa. 44.

The court had jurisdiction to decree the sale: Konigmaker v. Brown, 14 Pa. 269; Biesecker v. Cobb, 13 Pa. Superior Ct. 56; Keyzey's Case, 9 S. & R. 71; Horner v. Hasbrouck, 41 Pa. 169; Horner's App., 56 Pa. 405; Reid v. Clendenning, 193 Pa. 406; Yerkes v. Yerkes, 200 Pa. 419; Torr's Est., 2 Rawle 250; Hocker's App., 4 Pa. 497; Hoover v. Hoover, 5 Pa. 351; Teas' App., 23 Pa. 223.

OPINION BY MR. JUSTICE POTTER, October 14, 1912:

Robert H. Acklin died April 15, 1908, testate and leaving a widow, Mary M. Acklin, and three daughters. By his will, of which the Citizens Title & Trust Company of Uniontown, Pa., was executor, he directed that part of his real estate, including the premises here in controversy, should be sold by his executor, and one-third of the proceeds should be invested, the income to be paid to his widow during her life, and upon her death, the principal to be paid to his daughters, to whom he

gave also the remaining two-thirds absolutely. The widow elected to take under the will. On August 3, 1908, the executor presented a petition to the Orphans' Court, showing that the personal estate of the testator was insufficient for the payment of his debts, and praying for an order for the sale, for the payment of his debts, of a farm of about thirty-eight acres, situated in Luzerne Township, Fayette County. The court made a decree authorizing a public sale of the property, and on September 4, 1908, such sale was made and it was purchased for $5,125 by two of his daughters. The sale was duly confirmed and security entered and on September 30, 1908, the executor received the purchase money and executed and delivered a deed to the purchasers, who took possession of the property and have since made improvements upon it. Subsequently the executor filed an account which included the purchase money, and distribution was made to creditors and parties in interest.

On November 7, 1910, the widow presented a petition, alleging that the sale was the result of a conspiracy among the other legatees to defraud her; that the price realized was so grossly inadequate as to amount to a constructive fraud; and that the sale was invalid in law because the will worked a conversion of the land sold, into money, and consequently the testator's debts were not liens upon it. She prayed that the sale be set aside and revoked, the deed surrendered and canceled, and the purchase money returned by the executor to the purchasers. A citation was granted and answers were filed by the executor and the purchasers. After hearing, the court below dismissed the petition, stating in its opinion that no evidence had been offered to support the charge of conspiracy, and it was therefore disregarded. The remaining questions, raised by this appeal, are whether the court below had jurisdiction to order the sale, and whether the sale should have been set aside on the ground of inadequacy of price.

The petition under which the sale was made, was filed under the Act of February 24, 1834, P. L. 70, §20, which provides: "Whenever it shall satisfactorily appear to the executor or administrator, that the personal estate of the decedent is insufficient to pay all just debts, and the expenses of the administration, he shall proceed, without delay, in the manner provided by law, to sell, under the direction of the Orphans' Court having jurisdiction of his accounts, so much of the real estate as shall be necessary to supply the deficiency; and such real estate so sold shall not be liable, in the hands of the purchaser, for the debts of the decedent." The testator directed that all his real estate, except certain coal lands, should be sold by his executor within one year after his death. It is conceded that this provision worked a conversion of the property for the purposes of distribution. For all purposes other than those necessary to carry out the will, the property remains as it was. In Yerkes v. Yerkes, 200 Pa. 419, Mr. Justice MITCHELL said (p. 423): "It should never be overlooked that there is no real conversion, the property remains all the time in fact realty or personalty as it was, but for the purpose of the will so far as it may be necessary, and only so far, it is treated in contemplation of law as if it had been converted. Few testators have any knowledge of the doctrine or any actual intent to change the nature of their property except when and to the extent that may be required to carry out the special purpose of the will. The presumption therefore, no matter what the form of words used, is always against conversion, and even where it is required it must be kept within the limits of actual necessity. These are very elementary propositions, but it is necessary to recur to them frequently to avoid the tendency already referred to, the danger of which is apparent in many of our cases." In Painter v. Painter, 220 Pa. 82, our brother MESTREZAT said (p. 87): "While the doctrine of equitable conversion is well settled on principle and

reason, and is recognized in numerous cases determined by this court, the sphere or limitation of its application is equally well established and should be observed. The sole purpose of the doctrine, in the case of a will, being to effectuate the intention of the testator, it cannot be invoked when his intention fails or is incapable of accomplishment. The reason of the rule then ceases, and the rule itself no longer obtains. ...... (p. 88): This limitation upon the doctrine of equitable conversion is settled by a uniform current of decisions in this country and in England." Thus where the direction was to sell and pay certain legacies, the surplus remaining was distributed as real estate and not as personalty: Wilson v. Hamilton, 9 S. & R. 424. Where there is a conversion of real estate for the purposes of distribution, the distributees may agree that it shall remain land, and this will effect a re-conversion: Mellon v. Reed, 123 Pa. 1; Brandon v. McKinney, 233 Pa. 481. In the present case, the claims of the creditors were paramount to any provision in the will, and until those claims were discharged, there was nothing to which the legal fiction of conversion could apply. Counsel for appellant argue that the executor was empowered to sell without any authority from the court. Whether that be so or not, the validity of the sale is not unfavorably affected by the order made by the court, even though it was not necessary. Under any aspect of the case, the purchasers would take a good title under the deed of the executor.

As to the question of inadequacy of price, that was a matter peculiarly within the discretion of the court below. Only a palpable abuse of that discretion can justify interference by this court. No such abuse is shown here. It does not appear that any better price has been offered for the property, nor is any security tendered to insure a higher price at a resale. The petitioner was slow in moving. She waited more than two years after the sale was confirmed, the purchase money

paid, the deed executed, delivered, and possession given to the purchasers.  As far back as Simmond's Estate, 19 Pa. 439, Mr. Justice Lewis said (p. 441) : "After a sale made under an order of the Orphans' Court, and a final confirmation of it according to the rules of court, followed by the payment of the purchase money and the delivery of the deed, it is too late to make objections to the sale.  This is the general rule."  The only exceptions to this rule are in the cases of fraud: Grinrod's Est., 140 Pa. 161; or of gross mistake: Johnson's App., 114 Pa. 132.  In the present case neither fraud nor mistake was shown, and it further appears that appellant knew all about the proceedings and attended the sale, and bid for the property.  She was also present at the audit of the account of the executor in 1909, when the proceeds of the sale were distributed.  No reason appears why she could not have made her application to have the sale set aside, for inadequacy of price, before it was confirmed, and the deed delivered.  Instead of so doing, she waited for more than two years after confirmation before filing this petition.  The delay would be sufficient to justify the refusal of her petition.  But on the merits it was properly dismissed.

The assignments of error are overruled, and the order and decree of the Orphans' Court is affirmed.