## Kane et al. *v.* Girard Trust Company et al., Appellants.

Argued Dec. 6, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

reargument refused January 18, 1945.

'*Albert L. Katz,* with him *Roy Martin Boyd,* for appellants, executors and trustees.

*William R. Reynolds,* with him *Homer H. Hewitt, Jr.,* and *MacCoy, Brittain, Evans & Lewis,* for appellants, David Maimin et ux.

*Joseph Gross,* for appellee.

OPINION BY MR. JUSTICE DREW, January 2, 1945:

Carrie May Hoffman died April 10, 1940, seized, inter alia, of certain real estate in the City of Philadelphia. By her last will and testament, she designated Girard Trust Company and Ruth Naomi Schaufler as executors and trustees of her estate, and gave them power to sell her property "for such prices and upon such terms and conditions as to them shall seem best;

and to make, execute and deliver good and sufficient deeds . . ." Under this power, the trustees, on May 5, 1943, entered into a written contract with plaintiffs, Martin Kane and Nathan Zucker, for the sale of this real estate to them. Thereafter, but before final settlement and delivery of a deed, David Maimin, a tenant in the property contracted to be sold, offered a substantially higher price to the trustees. This offer was accepted by the trustees and the property was conveyed to Maimin and his wife. Plaintiffs then filed this suit in equity against the trustees and the Maimins, praying for a reconveyance of the real estate to the trustees and for specific performance by the latter of the agreement of sale. The learned chancellor granted the relief sought, and, after the dismissal of exceptions and the entry of a final decree by the court en banc, the trustees and the Maimins filed these appeals.

The decree of the court below must be reversed because the common pleas has no jurisdiction to set aside the sale to the Maimins and direct the trustees to reconvey to plaintiffs. The orphans' court has exclusive jurisdiction over all things pertaining to the settlement of decedents' estates: *Long's Estate*, 254 Pa. 370, 98 A. 1066. Since a conversion of real estate of a decedent by the exercise of a power of sale contained in a will pertains to the settlement of an estate, the matter of the enforcibility of the agreement of sale falls within the exclusive jurisdiction of the orphans' court. We said, in *McCullough's Estate*, 292 Pa. 177, 183, 140 A. 865: "That the supervisory power of the orphans' court extends as well to a sale under a power in a will as to one made under an order of court is undoubted." Also, in *Orr's Estate*, 283 Pa. 476, 479, this Court held: "By the Act of 1917 (June 7, P. L. 363, sec. 9, pars. d and n), the orphans' court was given the power to control executors in the management of estates placed in their hands, and of 'all cases within their respective counties, wherein executors, administrators, guardians or trustees may be

possessed of, or are in any way accountable for, any real or personal estate of a decedent'" However, in the circumstances, we think the case should be decided on its merits.

The basic facts are not in dispute. The agreement with plaintiffs fixed the purchase price at $26,500, payable as follows: $1,500 cash on the signing of the agreement, which sum was paid; $5,000 cash on settlement, and a purchase money bond and mortgage in the amount of $20,000. The agreement also provided that "The purchaser shall also furnish to the seller a policy of title insurance in a company satisfactory to the seller for the full amount of the mortgage"; and that "All sales by fiduciaries being liable to vacation by the courts, this agreement is made upon the express condition that it is subject to the court's approval if, *prior to settlement and delivery of deed,* proper action is taken in court to prevent the sale or the seller elects to seek a judicial decree before consummating the sale." (Italics added.)

On May 26, 1943, plaintiffs and a representative of Girard Trust Company met at the office of the Commonwealth Title Company, which was insuring the title, for the purpose of making settlement. At that time the settlement sheet prepared by the title company was approved and signed for both parties; plaintiffs deposited with the title company checks in an amount sufficient to meet the cash requirements on the settlement sheet, and executed the bond and mortgage, which they also left with the title company; and leases of tenants on the premises to be sold were assigned by the trustees in blank and given to plaintiffs' attorney. While the agreement of sale provided that the deed was to be prepared by plaintiffs and be presented to the trustees "for examination and execution at least ten (10) days prior to the time fixed for settlement", plaintiffs did not present it until this meeting of May 26, 1943. The representative of Girard Trust Company, when he left the title company's office, took the undated deed with him for approval and

execution by the trustees, with the understanding that he would return it to the title company when signed and acknowledged by the trustees; also that he would furnish to the title company, in order that it could make distribution of the funds and issue the title policy, certain data requested by it, i.e., information to show that the trusts under the will of Carrie May Hoffman were still subsisting, and proof as to the identity of Carrie May Hoffman, grantee under a prior deed with Carrie May Hoffman who died April 10, 1940, and as to the identity of George F. Hoffman, surviving spouse of Carrie May Hoffman, with the grantee in a deed to Girard Trust Company et al., dated December 30, 1941.

On May 27, 1943, the deed was approved by Girard Trust Company and forwarded by it to its co-trustee, Ruth Naomi Schaufler, for signature. The latter signed the deed, but before it could be acknowledged by her, or signed and acknowledged by the corporate trustee and delivered to plaintiffs, and before the requested information could be furnished to the title company, the trustees received a written offer of $28,500 cash for the property from the defendant, Maimin. This offer was increased by Maimin to $30,000 cash on June 3, 1943. The trustees promptly notified plaintiffs of the receipt of the higher offer, but they made no attempt to increase their offer. On June 5, 1943, the trustees accepted the offer of Maimin and returned to plaintiffs the bond and mortgage, unexecuted, and the hand money paid by them. Three days later the property was conveyed to Maimin and his wife for $30,000 cash. Plaintiffs then filed their bill of complaint. After hearing the learned chancellor, being of the opinion that settlement had been sufficiently effected at the meeting of the parties at the office of the title company on May 26, 1943, and for the reason that the trustees were irrevocably committed to convey the premises to plaintiffs, granted the prayer of the bill. His action was sustained by the court en banc, following argument on defendants' exceptions.

Plaintiffs knew that the trustees were acting in a fiduciary capacity when the agreement was executed on May 5, 1943. Under such circumstances, they were bound to be cognizant of the extent of the power of the trustees: *Clark v. Prov. Tr. Co.,* 329 Pa. 421, 198 A. 36; *Cent. T. & S. Co. v. Walters,* 314 Pa. 418, 171 A. 890. It is mandatory upon trustees, with discretionary power of sale, to dispose of trust property upon the most beneficial terms which it is possible for them to secure: *Orr's Estate,* supra. The court, in its supervisory control for the benefit of all interested, has power to see that a fair value is received: *Fricke's Estate,* 16 Pa. Superior Ct. 38. "It is not what was or what could have been obtained for the property, but what can be obtained for it that is the determining factor": *McCullough's Estate,* 292 Pa. 177, 181, 140 A. 865. A failure to obtain the most advantageous terms constitutes a breach of trust, and trustees may be surcharged for loss occasioned by a sale of trust property for an inadequate price: *Leslie's Appeal,* 63 Pa. 355. If a higher and better offer is obtainable from one person, after an agreement of sale has been entered into with another, the trustees are duty bound to rescind the agreement, return the hand money, and accept the higher offer: *Good v. Capital Bk. and Tr. Co.,* 337 Pa. 353, 11 A. 2d 489.

In the instant case there is no dispute as to these well-settled principles of the law of trusts. The controversy depends upon whether or not, in the absence of fraud, unfair dealing or gross inadequacy of price, the sale was consummated and the trustees prevented from setting it aside to accept a higher and more beneficial offer. So plaintiffs contend and the chancellor and court en banc held. Defendants, however, argue that it was the trustees' mandatory duty to accept the offer of Maimin and to rescind the agreement with plaintiffs, since settlement had not been completed, a deed had not been delivered and title had not passed.

Our decisions show conclusively that title must pass to the buyer in a matter of this kind before a fiduciary is relieved of the duty to accept a higher bid for trust property. There must be a consummated sale. Until title actually passes the property is a trust asset, and, so long as it forms part of the corpus of a trust, the trustees must get the highest price obtainable for it. The only exception to this rule would be where the delay in passing title is due solely to the fiduciaries' arbitrary tardiness; and the instant case does not fall within that exception. Legal title passes only with the delivery of the deed, and until then the trustee is bound to accept the best offer made for the property. It is obvious that the offer of Maimin of $30,000, all cash, was higher and more advantageous to the trust estate and to the beneficiaries thereunder than that of plaintiffs, which was $26,500, of which $20,000 was to be represented by a purchase money bond and mortgage. Therefore, the sale to plaintiffs not having been consummated, the trustees were bound to accept the offer of Maimin.

It was said by this Court, in *Clark v. Prov. Tr. Co.*, supra, which was an action to recover commissions upon the sale of property of a trust (p. 426) : "In negotiations with an executor, trustee or other fiduciary with reference to property owned by an estate, a real estate broker's right to a commission for procuring a purchaser may be defeated by *the fiduciary's duty to reject such purchaser if a better offer be received for the property before* title has passed." (Italics added.) In *Kargiatly v. Provident Tr. Co.*, 338 Pa. 358, 12 A. 2d 11, plaintiff entered into a written contract with defendant trustee for the sale to the former of certain land forming part of the trust property. Later the trustee rescinded the sale and accepted a higher offer from another purchaser, and plaintiff brought suit to recover the loss of his bargain. There was evidence on behalf of plaintiff that the trustee's representative, at the time the money was deposited by plaintiff, told him that a receipt

could not be given to plaintiff then because "if between now and the delivery of the deed we receive a higher offer, we are bound to accept . . . It is only a question now of being able to accept a higher offer between that day . . . and the delivery of the deed, . . ." In affirming the judgment entered for the trustee defendant on a directed verdict, we said: ". . . the trust company acted in good faith by informing plaintiff that the law required it to accept a better offer if one were made."

The Superior Court held, in *Brittain's Estate*, 28 Pa. Superior Ct. 144, that a sale under a testamentary power, while not primarily requiring confirmation by the court, is subject in like manner to its supervision and control; and that it was too late, as a general rule, to object to a sale after confirmation, payment of purchase money and delivery of deed. See also *Acklin's Estate*, 237 Pa. 528, 85 A. 862; Hunter's Pennsylvania Orphans' Court Commonplace Book, Vol. II, Par. 16 (a) and (b), pp. 1083 et seq.

The learned chancellor was of opinion that *Levy's Estate*, 326 Pa. 310, 192 A. 102, was authority, at least by implication, for his conclusion in the instant case. In this he was in error. If anything, that decision has the contrary effect. There, the sale of stock belonging to a trust estate which was sought to be set aside was fully consummated by the transfer of the certificates and the payment of the consideration. We there said, in affirming the decree of the court below which refused to set aside the sale because of inadequacy of price (pp. 315-6) : "This sale was consummated. In cases of this type a distinction must be drawn between agreements to sell and consummated sales: see *McCullough's Estate*, 292 Pa. 177. In the former, as in *Crawford's Estate*, 321 Pa. 131, where the price is inadequate, the performance of the contract will be restrained. But where the sale is consummated, as it is here, an entirely different result is necessarily reached."

The agreement of sale with plaintiffs specifically provided that it was subject to be set aside "prior to settlement and delivery of the deed." Not only was the deed not delivered, but there was no complete settlement. The information requested, in order that the objections on the settlement sheet could be removed and the title insurance issued as required by the contract, was not furnished, and the funds in the hands of the title company, plaintiffs' agent, were not disbursed. The sale was not consummated, title had not passed.

The final decree appealed from must be reversed for want of jurisdiction in the common pleas.

Decree reversed; costs to be paid by plaintiffs.

OPINION BY MR. CHIEF JUSTICE MAXEY, MR. JUSTICE HORACE STERN, and MR. JUSTICE ALLEN M. STEARNE, concurring in part with and dissenting in part from the opinion of the court:

We concur in that portion of the opinion which decides that under the facts of this case jurisdiction was not in the common pleas court but exclusively in the orphans' court. For this reason alone the decree of the court below must be reversed.

If the question were still open and had not become a settled Pennsylvania rule of property which only the legislature should now change, we would strongly question the principle of *Orr's Estate,* 283 Pa. 476, 129 A. 565, and the cases which follow it. In the absence of fraud, accident or mistake, and when the price is adequate, we can discover no reason why an honest sale made by a fiduciary should be set aside merely because of a subsequent higher offer. A beneficiary is not sacrosanct and a fiduciary ought not to be permitted to repudiate his contract any more than he could do if he were acting as an individual. Curiously enough, the effort to benefit trusts and persons under disability, under the above principle, has in fact, worked to their detriment, as evidenced by the results, because of the uncertainty in fiduciary sales of real estate.

Conceding that the principle of *Orr's Estate,* supra, should not now be changed, nevertheless we would not *extend* its operation. This Court has held that it will not set aside a sale after final settlement and transfer of title merely because of a higher offer. We would refuse the aid of equity to cancel such a sale where there was no fraud, accident or mistake, where the purchaser has deposited the full consideration money and the vendor has given the purchaser possession of the premises and a valid assignment of the leases. In our opinion under the facts of this case, the parties have so consummated their agreement that it would be most inequitable to set it aside.

We also suggest that the attention of the Legislature might well be called to the question of the advisability of changing by statute the effect of the decision in *Orr's Estate* and the cases which have followed it.