## Plasterer Estate

*H. Rank Bickel,* for petitioner.

*Philip S. Davis,* of *Davis, Katz, Bozgin & Davis,* for respondent.

GATES, P. J., November 19, 1968.—Isaac Plasterer died testate on July 22, 1959. On July 27, 1959, letters testamentary were granted to his daughters, Sadie M. and Mabel H. Plasterer who were designated executrices in his will.

Under the terms of the will, all of the real estate of decedent was devised under the remainder clause to his two daughters. They were expressly given the power to sell real estate without court approval.

Shortly after the will was probated, Isaac Plasterer's widow filed an election to take against the will. Thereafter, an incredible amount and variety of legal proceedings ensued, culminating with our removal of the designated executrices and the appointment of H. Rank Bickel, Esquire, as administrator d.b.n.c.t.a. on January 11, 1968, nearly seven and one-half years after the death of Mr. Plasterer.

It is needless to review in detail the many legal proceedings involved in this estate. However, for purposes to which we will later allude, we want to here note that Mr. Plasterer's two daughters claim all of his real estate, not only under the terms of the will, but by reason of an undelivered deed executed by Mr. Plasterer but found in his safe deposit box after his death, and,

therefore, subject to attack for nondelivery. Further, because of the waste, mismanagement, and delay, the former executrices are subject to a possible surcharge. They were removed for their incompetence and their refusal to obey orders and decrees of this court. They candidly admit that they believe that they own all of the estate and have acted upon that assumption over this long period of time. Consequently, we removed them and substituted an administrator d. b. n. c. t. a. so that this estate can be wound up before its complexity and delay consumes it.

On June 26, 1968, Mr. Bickel presented us with a petition for leave to make a public judicial sale of two parcels of realty in the estate pursuant to section 543 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.543, and amendments thereto.

The petition disclosed that the administrator wished to sell the real estate at a public sale which would have the effect of judicial sale. He assigned numerous reasons therefor, including the depreciation of the property; the necessity for the sale to make distribution to the parties legally entitled to the proceeds; to pay the debts of decedent; and because the hotel has been operated by the former executrices without permission of the Orphans' Court and at a loss to the estate. Petitioner alleged further that he does not have authority to make such a sale under the Fiduciaries Act of 1949, as amended, nor would he be authorized to make such a sale under the terms of the will.

On June 27, 1968, upon presentation and consideration of the petition, we ordered and decreed that the administrator should sell the real estate at public sale, and that the sale was to have the effect of a judicial sale, further ordering that provisions will be made for filing additional security by the administrator, if necessary, upon the confirmation of the sale.

On September 18, 1968, the administrator exposed the hotel property for public sale. The sale was well

advertised and well attended. The advertisements noted that the sale was made by direction of the Orphans' Court of Lebanon County. The conditions of the sale were announced prior to the auctioneer's receiving any bids.

The thirteenth paragraph of the conditions of sale is as follows: "This sale is subject to the approval of the Orphans' Court of Lebanon County, Pennsylvania".

The highest bidder at the sale was Harry W. Fisher who bid the price of $50,250. Immediately following the sale, Mr. Fisher signed articles of agreement with the administrator, and the eighth paragraph of the agreement recites that the sale was subject to the approval of the Orphans' Court of Lebanon County, Pa.

On October 8, 1968, the administrator appeared in court and presented his report of the public sale and requested confirmation thereof. At the same time, several attorneys appeared and announced that they represented clients who were prepared to offer substantially higher bids than were offered at the public sale, and we were requested not to confirm the sale but to consider the higher offers.

We took the matter under advisement, requested counsel to submit legal memoranda, and the matter is ripe for our determination.

Prior to the adoption of the Act of May 24, 1945, P. L. 944, 20 PS §818, the Orphans' Court, and the Court of Common Pleas for that matter, had the power and, indeed under certain circumstances, the duty to set aside a fiduciary's contract and to order a resale at a bid substantially higher than the one received. The law was well stated by Mr. Justice Drew speaking in Kane v. Girard Trust Company, 351 Pa. 191 at 196 wherein it is said:

"It is mandatory upon trustees, with discretionary power of sale, to dispose of trust property upon the most beneficial terms which it is possible for them to

secure: *Orr's Estate,* supra. The court in its supervisory control for the benefit of all interested, has power to see that a fair value is received: *Frick's Estate,* 16 Pa. Superior Ct. 38. 'It is not what was or what could have been obtained for the property, but what can be obtained for it that is the determining factor': *McCullough's Estate,* 292 Pa. 177, 181, 140A. 865. A failure to obtain the most advantageous terms constitutes a breach of trust, and trustees may be surcharged for loss occasioned by a sale of trust property for an inadequate price: *Leslie's Appeal,* 63 Pa. 355. If a higher and better offer is obtainable from one person, after an agreement of sale has been entered into with another, the trustees are dutybound to rescind the agreement, return the hand money, and accept the higher offer. *Good v. Capital Bk. and Tr. Co.,* 337 Pa. 353, 11A. 2d 489".

Thus, it was settled before the passage of the Act of 1945,[1] that fiduciaries (executors and administrators, as well as trustees) had the duty to accept higher bids in pursuit of their fundamental duty of protecting the beneficiaries of the estate.

The Act of 1945, provides as follows:

"When a fiduciary shall hereafter make a contract not requiring approval of court, or, when the court shall hereafter approve a contract of a fiduciary requiring approval of court, neither inadequacy of consideration, nor the receipt of an offer to deal on other terms shall, except as otherwise agreed by the parties, relieve the fiduciary of the obligation to perform his contract or shall constitute ground for any court to set aside the contract, or to refuse to enforce it by specific performance or otherwise: Provided, that this act shall not affect or change the inherent right of a court to set aside a contract for fraud, accident, or mistake".

---

[1] This act was in response to the dissent expressed in Kane v. Girard Trust Co., supra.

There is no suggestion that this public sale was held other than under good conditions, and there is no hint of fraud, accident, or mistake.

Concededly, it was the law that prior to the adoption of the Act of 1945, fiduciaries had the duty to repudiate an agreement of sale, if a later, higher offer was received before legal title passed, and the court would set aside the existing agreement of sale in such circumstances: Kane v. Girard Trust Company, supra; Orr's Estate, 283 Pa. 476. However, because of the uncertainties created in fiduciary sales, the legislature apparently concluded that it was desirable, in some circumstances, such as unconditional agreements or those agreements already approved by the court, that there be no right to repudiate. The Act of 1945 was the result, and its constitutionality was upheld in Brereton Estate, 355 Pa. 45. See Annotations, Fiduciary Review of October 1946.

As pointed out in Brereton's Estate, supra, at page 51, "The Act deals with two classes of contracts: (1) those not requiring court approval, and (2) those requiring it". If the contract does not require the approval of the Orphans' Court, then neither inadequacy of consideration, nor the receipt of an offer to deal on another (better) basis shall relieve the fiduciary from the performance of his contract. On the other hand, if the contract does require the approval of the court, and the court has not as yet approved the contract, then the law prior to adoption of the Act of 1945 is applicable, and the court is dutybound to exercise its supervisory control over the sale for the benefit of all interested parties, and it becomes its duty to see that a fair value is received. Therefore, the offer of substantially higher bids is prima facie evidence that the bid received is not fair and the court should consider the subsequent offers.

Much is made in some of the briefs submitted to us of the argument that it was not necessary for the administrator here to obtain prior or subsequent court approval of the sale under the circumstances. Consequently, if it is surplusage that he has done so, it is argued we can disregard it, and we are bound by the Act of 1945 to honor the bid of Mr. Fisher. Unfortunately, the argument overlooks the plain language of the Act of 1945.

The opening sentence of the Act of 1945 clearly directs our course. The act says, "When a fiduciary shall hereafter make a contract not requiring approval of the court . . ." The fiduciary in this case has made a contract requiring the approval of the Orphans' Court. The sale was made subject to the condition that it be approved by the Orphans' Court of Lebanon County, Pa. The proposed agreement of sale expressly sets forth this condition. Therefore, it is of no consequence that the fiduciary might have been able to effect the sale in question without court approval.

Additionally, we find that this sale did in fact require the approval of the Orphans' Court.

The administrator d.b.n.c.t.a. was cognizant of the complexity and intensity of the controversies surrounding the settlement of the Plasterer Estate. He was desirous of proceeding promptly to convert the nonproductive assets, pay the debts, and distribute the estate to those entitled to it. He told us this in his petition. He was also cognizant of the claims of Mr. Plasterer's daughters to the real estate, not only under the terms of the will, but by reason of an undelivered deed. The administrator deemed it advisable that the sale have the effect of a judicial sale. Therefore, he petitioned us under the provisions of the Act of April 18, 1949, P. L. 512, sec. 543, 20 PS §320.543. This act provides, in pertinent part, as follows:

"When the personal representative is not authorized to do so by this act or is not authorized or is denied the power to do so by the will, if any, or, *when it is advisable that a sale have the effect of a judicial sale,* he may sell any real or personal property of the decedent, including property specifically devised, at public or private sale . . . *under order of the orphans' court of the county where letters testamentary or of administration were granted, upon such terms and upon such security* and after such notice as the court shall direct, whenever the court shall find such sale, pledge, mortgage, lease, exchange, or option to be desirable for the proper administration and distribution of the estate". (Italics supplied.)

As previously indicated, the complexity and the nature of the various claims in this estate dictate that it is advisable for the proper administration and distribution of this estate that the sale have the effect of a judicial sale. The terms of the sale were decreed by the court upon petition by the administrator. One of the terms in the decree was the confirmation of the sale. Thus, we conclude that the sale was one which takes it out of the operation of the Act of 1945.

There remains but to determine, at this stage of the proceeding, what can be obtained for the property and is it substantially higher than the bid of Mr. Fisher. We perceive the best course to accomplish this result is for the administrator to readvertise for the submission of sealed written bids, accompanied by earnest money in the form of a certified check payable to the estate in the amount of 20 percent of the bid. The advertisement is to be given once a week for three successive weeks in the Lebanon County Legal Journal and the Lebanon Daily News. All bids must be received in hand by the administrator within 10 days of the date of the last advertisement. In the event that any bid so submitted is substantially higher than the bid of Mr.

Fisher, the substantially higher bid will be accepted, and the bid of Mr. Fisher rejected. In the event no substantially higher bid is received, the proposed sale to Mr. Fisher will be confirmed.

### ORDER

And now, to wit, November 19, 1968, upon consideration of the petition to confirm the sale to Harry W. Fisher, it is the order of the court that consideration of the prayer of the petition be deferred until such time as the administrator d.b.n.c.t.a. shall have had an opportunity to comply with the foregoing opinion. All proceedings to stay meanwhile.