OPINION
By the Court, Maupin, J.:
In this appeal, we consider a long-standing local practice in Clark County, Nevada, under which district judges routinely award attorney fees in probate matters based upon the gross value of the decedent’s estate.
We hold that an agreement between an estate and its counsel, providing for payment to counsel of 5 percent of the estate’s gross value, is not per se reasonable. Thus, district courts exercising judicial oversight in probate matters must independently review challenged fee agreements for reasonableness under NRS 150.060(1) and Supreme Court Rule 155(1).
We also consider separate district court rulings rejecting claims against the estate for extraordinary attorney fees and costs of administration and assessing estate attorneys for unnecessary brokerage charges incurred by the estate as a result of their advice.

FACTS AND PROCEDURAL HISTORY

John Bowlds died in 1999 with an estate valued in excess of 7 million dollars, consisting largely of real estate and corporate securities. The will gifted the bulk of Bowlds’ estate to respondent/cross-appellant, The American Cancer Society (ACS). Mr. Bowlds named his tax preparers, appellants/cross-respondents Cris and Cathy Cris, as executors.
*993 The executors retained the law firm of Kyle & Kyle to assist them in the administration of the estate. In accord with the custom and practice in Clark County, the agreement between the executors and Kyle & Kyle provided that the attorneys would receive a fee equal to 5 percent of the gross value of the estate, plus $250 per hour for “extraordinary” fees.
Administration of the estate required satisfaction of a single creditor’s claim, liquidation of highly marketable securities, and distribution of property in Nevada and Louisiana. Kyle & Kyle advised the executors to sell the estate’s securities through three different brokers to avoid the appearance of favoritism that might arise from use of the executors’ personal broker. Two of these brokers charged sales commissions of nearly 5 percent, and the other charged approximately 1 percent. The executors ultimately filed an amended accounting seeking approval of the 5 percent attorney fee, statutory administrative fees, extraordinary administrative and accounting services they themselves had performed, extraordinary attorney fees, and the brokerage commissions.
ACS formally objected to the accounting. In summary, ACS alleged that: the basic fee agreement with Kyle & Kyle was unreasonable, the extraordinary attorney fee request was unjustified, the executors’ claim for fees in excess of statutory fees involved services ordinarily provided by an estate’s personal representatives or was otherwise unreasonable, the executors breached their fiduciary duties by paying excess brokerage commissions, and the executors mishandled the estate’s federal tax returns.
The executors answered the objection through their counsel, asserting that the estate was complex; that the 5 percent fee agreement was customary in Clark County and therefore per se reasonable; that the estate owed extraordinary attorney fees in addition to the 5 percent fee; and that the expenditures to the executors for tax preparation and accounting services were reasonable and resulted in considerable savings in costs that would have been necessitated by retention of outside preparers. They also asserted that the brokerage fees, which averaged 3 percent, were not excessive.
The executors separately retained Cary Colt Payne, Esq., to represent them in connection with the ACS challenge proceedings, having concluded that the challenge created a possible conflict of interest with Kyle & Kyle. The executors ultimately sought reimbursement for Mr. Payne’s fees from the estate.
Following an evidentiary hearing on the ACS objections to the accounting, the district court approved the basic 5 percent fee arrangement. The court then proceeded to rule upon the other challenges as follows. First, concluding that Kyle & Kyle improperly advised the executors to liquidate the securities through the three *994 brokers, the district court deducted the brokerage commissions that exceeded 1 percent, amounting to $106,991, from the firm’s attorney fees.[1] Second, the court awarded the executors statutory fees in excess of $150,000, plus extraordinary professional and bookkeeping fees on a reduced basis in the amount of $20,000. Third, the court denied Kyle & Kyle’s request for extraordinary fees. Finally, the court denied the executors’ request for reimbursement for Mr. Payne’s fees, assessing that expense as an off-set against the executors’ statutory fees.
On appeal, the executors challenge the denial of extraordinary attorney fees, fees for Mr. Payne’s services, and partial denial of the executors’ request for nonstatutory professional and bookkeeping fees. The ACS cross-appeal challenges the district court’s grant of attorney fees in accordance with the 5 percent custom and practice, and its decision to deduct the excess brokerage commissions solely from Kyle & Kyle’s attorney fees.

DISCUSSION

Attorney fees based upon 5 percent of gross estate value

ACS asserts that the district court erred in upholding the 5 percent fee agreement with Kyle & Kyle based exclusively upon local custom and practice in Clark County.
The executors testified at the hearing that they agreed to the fee arrangement based upon Kyle & Kyle’s representations that the range for attorney fees in Nevada was 5 to 8 percent. They also confirmed their failures to determine whether such an arrangement was reasonable under the circumstances, negotiate an hourly arrangement, or seek competitive proposals from other firms. The executors defended the fee agreement with the deposition of attorney Harry Claiborne, Esq., who testified that Clark County attorneys routinely charged 5 percent fees in probate matters and that such fees were per se reasonable.
Gardner Jolley, Esq., a Las Vegas attorney, testified as a probate expert for ACS that the Bowlds’ estate required only routine and simple administration. In this, he stressed that no one contested the will, the estate administration involved only one creditor’s claim, and the real estate and securities sales were relatively uncomplicated. Going further, Mr. Jolley rejected the notion that the customary 5 percent fee was per se reasonable. Rather, he stated that this figure provided a good starting point from which to judicially evaluate attorney fees in probate cases. He finally concluded that Kyle & Kyle’s fee agreement in this matter was unreasonable under the applicable statutory provisions and Nevada Supreme Court Rules— *995 NRS 150.060[2] and SCR 155.[3] These measures, when read together, subject estate attorney fees to district court approval based upon SCR criteria for reasonableness.
The Clark County Probate Commissioner testified on behalf of Kyle & Kyle that he based over 50 percent of his fee recommendations in Clark County probate matters on the 5 percent custom and practice, and that he routinely recommended confirmation of unchallenged 5 percent fee agreements to Clark County probate judges. Although stating on cross-examination that such arrangements were not per se reasonable and not customary in other judicial districts in Nevada, he indicated that Kyle & Kyle reasonably relied upon the local custom and practice in setting its fee structure.
Despite its belief that Kyle & Kyle failed to earn the fees charged under the agreement, the district court approved the 5 percent charges based upon the local custom and practice described by the probate commissioner. This approval occurred without a review of the fee structure under either NRS 150.060 or SCR 155.
ACS asserts that, under NRS 150.060, a district court is not bound by a fee agreement between an attorney and an estate, and that a district court must review such agreements for reasonableness under SCR 155. ACS also argues that Kyle & Kyle’s fee agreement was not per se reasonable and was, in fact, unenforceable under the factors enumerated in SCR 155(1). Thus, ACS claims that the district court erred in its failure to follow the stric *996 tures of the statute and court rule. We agree that the district court did not comply with NRS 150.060 and SCR 155(1).
A district court enjoys wide discretion in awarding attorney fees in estate matters, even those set by agreement. This discretion is limited only to the degree that such awards must be reasonable.[4] We review such awards for abuse of that discretion.[5]
We have stated in considering a previous version of NRS 150.060 that
only the court can determine the amount of compensation to be allowed. Any agreement between an executor and his attorney with regard to the attorney’s compensation can be disregarded by the court.[6]
NRS 150.060(1) further provides that “[attorneys for personal representatives are entitled to reasonable compensation for their services.’ ’
As noted, the district court approved the Kyle & Kyle arrangement based upon the probate commissioner’s testimony that such agreements were customary in Clark County. We note, however, that the probate commissioner also testified that he did not believe the fee was reasonable in this case. Thus, taken in its entirety, the commissioner’s testimony did not support the district court’s ruling.
While the Kyle & Kyle fee reflected customary charges for such services in the local community under SCR 155(1), this factor is only correlative, not determinative, of the reasonableness of a particular fee structure. For example, it is equally if not more important to evaluate fee arrangements under the remaining seven SCR 155(1) factors. For example, we cannot discern from this record whether the 5 percent fee was justified by the time and labor involved, whether the firm’s retention preempted the taking of other business, or whether the firm’s experience and abilities in such matters commanded such generous compensation. As a matter of public policy, these determinations should be made under all of the SCR 155 considerations.
[Headnote 4]
We therefore conclude that the district court erred, as a matter of law, in its sole reliance on the local custom and practice. We *997 therefore hold that such arrangements are not per se reasonable and, when challenged, must be independently reviewed by the district court for reasonableness based upon consideration of all of the factors set forth in SCR 155.[7] Accordingly, we reverse the district court’s fee approval in this instance and remand this matter for a determination as to whether the Kyle & Kyle agreement is reasonable. If the district court cannot approve the existing agreement under SCR 155, it must conduct proceedings to determine a reasonable fee.

Extraordinary attorney fees

The executors argue that the denial of extraordinary attorney fees under the Kyle & Kyle arrangement is not supported by substantial evidence. Kyle & Kyle sought extraordinary fees for responding to the ACS objection, seeking appointment of special administrators, reviewing the contents of Bowlds’ safe, handling the stock sales, filing revised letters testamentary, clerical work, interaction concerning funeral arrangements, work in connection with ancillary probate proceedings in Louisiana, reviewing Bowlds’ mail, and showing residential estate property to a potential purchaser.
The executors’ fee agreement with Kyle & Kyle provides that, in addition to the 5 percent fee for probating the estate, the firm could submit hourly charges for extraordinary services, including time
[sjpent in trial, pretrial conferences, hearings or meetings with Court or Court personnel, research, settlement negotiations, conferences, discovery, investigation, filing suit or activities on behalf of the client to settle his/her claims, including any ancillary probate proceedings which may be required in Louisiana or any other state.
The extraordinary-fee provision limited such compensation to time spent in trial, along with other litigation and settlement activities. The record suggests that, while Kyle & Kyle devoted some effort to the Louisiana proceedings and defended the estate’s position concerning the ACS objection to the amended accounting, much of the claim for extraordinary fees involved services normally expected of probate attorneys, as well as nonlegal and clerical services. Further, beyond the fee challenge, Kyle & Kyle was not required to engage in additional extraordinary activities such as the defense of will contests or complex creditor claims. And, given the actual work performed, and given the generosity of the 5 percent fee arrangement, it was not unreasonable for the district *998 court to reject additional charges in connection with that arrangement, or in connection with any other litigation activity. Accordingly, we cannot conclude that the district court abused its discretion in denying the extraordinary-fee request. We note, however, that the rejection of the extraordinary-fee request may have been driven by the approval of the basic fee agreement. Whether or not the district court upholds the 5 percent basic fee agreement on remand, the district court may consider all relevant SCR 155 factors in crafting a reasonable overall compensation package for the estate’s attorneys.

Assessment of brokerage commissions against Kyle & Kyle

The executors assert that the district court erred in assessing the brokerage fees against Kyle & Kyle, claiming that the commissions were not excessive. ACS defends this assessment, arguing that the issue before the district court was not whether 5 percent commissions were in and of themselves reasonable, but rather, whether the executors breached their fiduciary duty by paying the commissions when a lower rate was readily available. Additionally, on cross-appeal, ACS further asserts that the court should have found the executors jointly and severally liable with Kyle & Kyle for the excessive brokerage commissions. We agree with ACS in both respects.
The executors testified at the accounting hearing that, while their personal stockbroker at Morgan Stanley Dean Witter was willing to liquidate the stocks for a 1 percent commission, Kyle & Kyle advised them to use three different brokers to avoid the appearance of “favoritism.” Although one of the executors, Mr. Cris, had been a licensed stockbroker for many years and was aware that brokerage fees varied within that industry, he made no attempt to negotiate the commissions. In this, he simply assumed that whatever price the brokers charged would be fair.
ACS presented evidence that the Bowlds’ estate could have paid substantially less in brokerage commissions for the sale of the estate’s securities through competitive bidding or negotiation. Expert testimony also suggested that, because the two high-commission brokers were not members of the New York Stock Exchange, they were required to process the sales transactions at increased costs through intermediaries. And, as noted, one of the brokers was willing to liquidate all of the securities for a 1 percent commission. We therefore conclude that substantial evidence supports the district court’s conclusion that the executors paid excessive commissions on the stock sales.
The district court was also justified in its assessment of the excess charges against Kyle & Kyle. First, Mr. Cris and Mr. Kyle testified that Mr. Kyle chose the two more expensive brokerage *999 houses. Second, Mr. Kyle confirmed that one of these firms served as his personal broker and that he had previously engaged in an employment relationship with a broker from the other. Third, he picked these firms in lieu of having one firm handle all of the transactions at a lower price.
Regarding the ACS challenge on cross-appeal, a personal representative may reasonably rely on legal advice from counsel.[8] However, given that Mr. Cris had been a licensed stockbroker for 20 years, it was unreasonable for him to rely on Kyle & Kyle’s advice to use the two higher priced brokerage firms without inquiring as to their commissions or attempting to negotiate them. Aside from his brokerage experience, Mr. Cris should have been aware of the variation in brokerage commissions, given that his personal broker, Morgan Stanley, charged 1 percent. This relatively low commission, compared with those charged by the other two firms, should have alerted Mr. Cris to the possibility of selling all of the estate’s securities for a lower fee.
The executors, in their fiduciary capacity, were under a duty to conserve estate assets.[9] Although the district court made no express findings that the executors breached their fiduciary duties,[10] Mr. Cris must have understood that, regardless of his attorney’s advice, he was committing waste against the estate. Accordingly, we conclude that the district court manifestly erred in its failure to jointly and severally assess the excess commissions against both the executors and the attorneys.
We therefore affirm the order deducting the excess brokerage commissions from Kyle & Kyle’s fees. We reverse the order, in part, to the extent that it fails to hold the executors jointly and severally liable for the excess commissions.

Fees for the executors’ accounting services

The executors assert that the district court erred by reducing their request for professional and bookkeeping fees. A personal representative may obtain compensation for extraordinary services *1000 under NRS 150.030, but a district court has the discretion to award such compensation.[11] Based upon testimony that substantially undermined this claim, we conclude that the district court did not abuse its discretion in its partial award of professional fees to the executors.

Fees for alternate counsel

The executors assert that the district court abused its discretion in denying payment of Mr. Payne’s fees. They claim that the additional fees were necessitated because a temporary conflict of interest arose between the estate and Kyle & Kyle pending judicial resolution of the ACS objection to the firm’s fee agreement. Appellants rely upon NRS 132.135 for the proposition that expenses of estate administration include the fees of “any attorney retained” by a personal representative.
SCR 178(l)(b) provides that a lawyer may not act as an advocate at trial in which the attorney is likely to be a necessary witness, except when the attorney’s testimony “relates to the nature and value of legal services rendered in the case.” This rule essentially allows an attorney to continue representing a client even if that attorney must testify regarding his or her fees, as such testimony generally does not implicate a conflict of interest. Here, Mr. Kyle’s testimony largely related to the nature and value of his legal services. Further, the executors have never contested the validity of the basic attorney fee arrangement and continue to urge its validity before this court. Accordingly, there was no conflict concerning the fee arrangement requiring the retention of outside counsel.
While attorneys for personal representatives are entitled to reasonable compensation from an estate under NRS 150.060, such payments must at least generally benefit the estate.[12] Because Payne’s retention was unnecessary, we conclude that the district *1001 court did not abuse its discretion under NRS 150.060 in denying an award of fees for Payne’s services.[13]

CONCLUSION

We reverse that portion of the district court’s order approving the
5 percent fee agreement. We therefore remand this matter to the district court for review of the entirety of the Kyle firm’s charges, in accordance with this opinion. We affirm the portion of the order below denying the executors’ professional fees in part and denying reimbursement for fees generated in connection with their retention of alternate counsel. We also affirm the portion of the order assessing the amount of $106,990.61 against the firm of Kyle
6 Kyle for excess brokerage commissions paid in connection with the liquidation of securities. Finally, we remand this matter for the district court to amend its order to include the imposition of joint and several liability against the executors for the excess commissions assessed against Kyle & Kyle.
Rose and Douglas, JJ., concur.

The broker who charged 1 percent was willing to handle the entirety of the sales transactions.

NRS 150.060(1) states in relevant part:
Attorneys for personal representatives are entitled to reasonable compensation for their services, to be paid out of the decedent’s estate. The amount must be fixed by agreement between the personal representative and the attorney, subject to approval by the court, after petition, notice and hearing as provided in subsection 2.

Supreme Court Rule 155(1) states:
1. A lawyer’s fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(b) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(c) The fee customarily charged in the locality for similar legal services;
(d) The amount involved and the results obtained;
(e) The time limitations imposed by the client or by the circumstances;
(f) The nature and length of the professional relationship with the client;
(g) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(h) Whether the fee is fixed or contingent.

See NRS 150.060(1); Mau v. Woodburn, 80 Nev. 184, 188, 390 P.2d 721, 723 (1964).

Mau, 80 Nev. at 188, 390 P.2d at 723.

Id.

Unchallenged fee arrangements remain subject to discretionary review under NRS 150.060 and SCR 155.

Matter of Estate of Thomas, 532 N.W.2d 676, 686 (N.D. 1995).

See NC Illinois Trust v. First Mini Bancorp, 752 N.E.2d 1167, 1180 (Ill. App. Ct. 2001).

See In re Estate of Scheibe, 140 N.W.2d 196, 198 (Wis. 1966) (observing that an executor “must act not only honestly or with good faith in the narrow sense but must also exercise the duty of loyalty toward the beneficiary for whose benefit the power of sale is to be exercised and with such care and skill as a man of ordinary prudence would exercise in dealing with his own property”); Kane v. Girard Trust Co., 40 A.2d 466, 469 (Pa. 1945) (holding that a fiduciary has the obligation to reasonably attempt to obtain the best price for estate property).

NRS 150.030 states:
Such further allowances may be made as the court deems just and reasonable for any extraordinary services, such as:
1. Management, sales or mortgages of real or personal property.
2. Contested or litigated claims against the estate.
3. The adjustment and payments of extensive or complicated estate taxes.
4. Litigation in regard to the property of the estate.
5. The carrying on of the decedent’s business pursuant to an order of the court.
6. Such other litigation or special services as may be necessary for the personal representative to prosecute, defend or perform.

See, e.g., Matter of Estate of Rohrich, 496 N.W.2d 566, 571 (N.D. 1993) (stating that an attorney’s services must benefit the estate to justify compensation from estate assets).

We recognize that Payne also submitted arguments defending the brokerage arrangements and the executors’ claims for extraordinary fees. To the extent that he did so, his efforts benefited the executors, not the estate.